WIESINGER v. FIRST NATIONAL BANK OF BENTON HARBOR.

1. Promissory Note—Maturity—Days of Grace.
    An action commenced upon a promissory note on the last day of grace is premature.

2. Malicious Prosecution of Attachment—Probable Cause—Advice of Counsel—Debt not Due.
    In an action for the malicious prosecution of an attachment, proof that defendant placed all of the facts before his counsel, and acted upon his opinion, will establish probable cause; but

where it appears that part of the indebtedness alleged in the affidavit for the writ to be due and payable consisted of a note which, to the knowledge of the defendant, was not then due, and that defendant did not consult his counsel as to his right to include the same, it is error to direct a verdict for defendant.

3. ESTOPPEL — STATEMENTS IN PLEADINGS.

Where the declaration in an action for maliciously suing out a writ of attachment alleges that "the defendant caused the affidavit to be filed in the office of the clerk of the court, and caused a writ of attachment to be issued" thereon, plaintiff cannot be heard to say that the affidavit was not made and filed prior to the issuance of the writ.

Error to Berrien; Coolidge, J. Submitted June 5, 1895. Decided July 13, 1895.

Case by John G. Wiesinger against the First National Bank of Benton Harbor for the malicious prosecution of an attachment. From a judgment for the defendant, plaintiff brings error. Reversed.

*G. M. Valentine* and *W. C. Hicks,* for appellant.

*Victor M. Gore* and *George S. Clapp,* for appellee.

LONG, J. This action is brought to recover damages for maliciously suing out a writ of attachment against the property of the plaintiff by the defendant bank. The affidavit upon which the writ of attachment was issued was made by the president of the bank, and alleges, among other things, that the defendant in the writ (the plaintiff here) was indebted to the bank in the sum of $750, which amount was then due upon express contract. The causes for the issuing of the writ are stated to be that the defendant in the writ "is about to remove his property out of this State with intent to defraud his creditors; that the defendant is about to abscond from the State to the injury of his creditors; and that he has assigned his property with intent to defraud his creditors." The affidavit was made on September 30, 1893. The indebtedness consisted of three notes, aggregating $750.

Among these notes was one for $600, which plaintiff in this suit claims was not due at the time suit was brought upon it. The court below directed verdict in favor of defendant on the ground that it was acting upon the advice of counsel, to whom had been communicated all the facts in relation to the matter.

It appears from this record that the last day of grace on the $600 note was Saturday, September 30, 1893, the day upon which the attachment was issued. Mr. Wiesinger had all that day in which to pay this note. 2 Am. & Eng. Enc. Law, p. 396. The suit was therefore prematurely brought on the note, and the bank had no legal right to an attachment for the amount it claimed to be due. *Estlow* v. *Hanna,* 75 Mich. 219; 2 How. Stat. §§ 7986, 7987. The bank officers apparently knew this. Mr. Bailey, the president, testified upon that subject as follows:

"*Q.* Did you ask Mr. Gore [counsel for the bank] whether suit could be brought on this note on the 30th of September, or not?

"*A.* We had enough that was already past due. There was some discussion as to how much was due.  *  *  *

"*Q.* So that, as to the question whether suit could be brought on that note of $600, September 30th, you didn't ask Mr. Gore at all?

"*A.* No, sir; not as to whether suit could be brought. I did ask him this; he said we were not obliged to lie down, and see the property run away from us, even if the paper was not due.

"*Q.* So that you considered that the note was not due so that suit could be brought upon it?

"*A.* I should consider that a man had until 4 o'clock of that day to pay that paper in.  *  *  *

"*Q.* You knew there could be no suit brought on that note on the 30th of September; at least you believed that?

"*A.* Not until the close of business; but still—

"*Q.* You had not yet got to the opening of business on the 30th?

"*A.* No, sir."

Mr. Bailey also testified that he knew what the law was as to the time of notes falling due.

Mr. Gore testified that Mr. Bailey told him that he thought the $600 note was due. He was asked:

"*Q.* You say yourself, you didn't examine the note?

"*A.* I didn't. Didn't see it at all. Never saw it until it was here.

"*Q.* You did not stop to see whether the days of grace had expired or not?

"*A.* Mr. Bailey is a banker. He said it was due.

"*Q.* Did you examine the note at all, or ask any question about whether the days of grace had expired?

"*A.* No, I simply asked when it was due.

"*Q.* You left that to him, didn't you?

"*A.* Didn't leave anything to him; never considered it.

"*Q.* You asked him if it was due, and he said it was?

"*A.* Yes, sir; he went to ascertain that fact."

Witness further said:

"My idea at that time was that the note could be sued on that day. There is authority for that position.

"*Q.* Did you examine any authority on that question?

"*A.* No; I looked up authority with reference to the collaterals particularly. That was the question presented to me,—whether or not, having collateral for his note, he had a right to the attachment,—and I ascertained he had.

"*Q.* You heard Mr. Bailey say here that he understood now, and then, that that note would mature at the close of banking hours Saturday?

"*A.* I heard him say he would have until 4 o'clock in the afternoon to pay it."

It has several times been held in this court that in an action for malicious prosecution proof that defendant placed all the facts before his counsel, and acted upon his opinion, established probable cause; and in attachment proceedings that rule was also held. *Le Clear* v. *Perkins,* 103 Mich. 131. In the present case, however, the party making the affidavit testifies that he knew the $600 was not yet due, and he apparently did not consult counsel upon that question, but determined to attach for that as well as for the amount actually due. Mr. Bailey confesses that he was a banker of experience; knew the law as to when a note would become due; when suit could be

brought upon it he also knew, and knew that this was premature.  He had no legal right to tie up by attachment several hundred dollars' worth of plaintiff's property upon a note not yet due.  The court was in error in directing verdict in favor of defendant.  It was at least a question for the jury to determine whether the bank officers did not act from malicious motives and without probable cause.

Claim is also made by the plaintiff that the affidavit was not made and filed before the writ issued.  Plaintiff is not in a position to raise that question.  The declaration sets forth that "the defendant caused the said affidavit to be filed in the office of the clerk of the court, and caused a writ of attachment to be issued."  In the face of this allegation in the declaration, the plaintiff cannot be heard to say that no affidavit was filed.

The judgment below must be reversed, and a new trial ordered.

The other Justices concurred.