JOHN ANTCLIFF v. RANDY JUNE AND J. REID CROWELL.

*Service of process—Pleading—Malicious prosecution—Abuse of process.*

1. A justice's summons in a suit commenced under How. Stat. § 7317, authorizing its service in an adjoining county where the demand sued on is principally for labor or services, must be *directed* to an officer of that county.[1]

2. Obtaining a judgment by fraud and perjury, without any valid demand to base it upon, and suing out an execution upon such judgment, with knowledge of its false and fraudulent character, and extorting money under such execution, is an abuse of process; citing *Barnett v. Reed*, 51 Penn. St. 190.

3. For every malicious wrong there is certainly in this day and age a remedy; and, under the liberal system of pleading in this State, a plain and clear statement of the facts constituting the wrong is sufficient, and it matters but little, in actions of trespass on the case, what the action is named or called.[1]

So *held*, where an attorney, with full knowledge of the invalidity of a claim of $50 made by a client against a resident of an adjoining county, took out a justice's summons directed to any constable of the county where issued, and caused it to be served upon the defendant in the county where he resided by a deputy-sheriff of that county, and on the return-day, the defendant not appearing, took a judgment for $300, which he removed by transcript to the circuit court, and caused an execution to be issued thereon, which he

---

[1] See *Smith v. Bresnahan*, 59 Mich. 346, for a further construction of this statute.

[1] See *Wood v. Railroad Co.*, 81 Mich. 358.

placed in the hands of the sheriff of the county in which
the defendant resided, and by threats of a levy upon
defendant's property secured from him $240 in settlement of
such void judgment.    And it is held that a declaration
averring such facts sets forth an actionable wrong,—one that
can be recovered for in an action on the case,—and that it is
immaterial what it is called.

Error to Jackson.    (Peck, J.)    Argued April 18, 1890.
Decided June 27, 1890.

Case for malicious prosecution and malicious abuse of
process.    Plaintiff brings error.    Reversed.    The facts are
stated in the opinion.

*Hewett & Freeman,* for appellant, contended:

1. The pretended claim for services in getting a wife for Antcliff
   was illegal and void, and an action could not be maintained on
   it, even if there had been a contract for such services.    Defend-
   ants knew this, or should have known it; hence there was want
   of probable cause for bringing and maintaining the suit; citing
   *Eastin v. Bank,* 66 Cal. 123.
2. In support of the claim that the service of the summons
   gave the justice no jurisdiction, counsel cited How. Stat. §§
   6827, 7074; *Rasch v. Moore,* 57 Mich. 56; *Ins. Co. v. Page,* 61
   Id. 72; and, a justice's court being of special and limited juris-
   diction, its jurisdiction must affirmatively appear; citing *Gadsby
   v. Stimer,* 79 Mich. 260.

*Austin Blair,* of counsel, for appellant, contended:

1. The action is sustainable upon the principles laid down in *Brand
   v. Hinchman,* 68 Mich. 590, 597, where it is stated that, "Lat-
   terly the American authorities are tending strongly and increas-
   ing rapidly in favor of the maintenance of a suit for malicious
   prosecution where no property is seized and the' person is not
   molested."
2. The action of the defendants before the justice was a gross abuse
   of process, and all of the subsequent proceedings founded upon
   it partook of the same character; citing Cooley, Torts, 189;
   *Closson v. Staples,* 42 Vt. 209.
3. The payment of the $240, though in form a compromise, was
   in no sense voluntary.    The plaintiff and his attorney were
   claiming the money upon an apparently legal process.    Such

payment is not voluntary, whatever form it may take; citing *Bank v. Watkins*, 21 Mich. 483; nor was it necessary to make any protest, the demand being illegal; citing *Atwell v. Zeluff*, 26 Mich. 118.

*Barkworth & Cobb*, for defendant Crowell, contended:

1. The essentials of a proper count either for malicious prosecution or for malicious abuse of process are entirely lacking in either count, and no cause of action is stated. An action for malicious prosecution will not lie when an erroneous judgment has been taken, nor in a civil action in any case where jurisdiction was lacking in the court resorted to; citing *Vanduzor v. Linderman*, 10 Johns. 106; *Savil v. Roberts*, 1 Salk. 13; *Purton v. Honnor*, 1 Bos. & Pull. 205; *Pangburn v. Bull*, 1 Wend. 351; *Closson v. Staples*, 42 Vt. 209.

2. Plaintiff, by denying the jurisdiction of the justice, and refusing to attend the suit or participate in any manner in the proceedings directly produced by the prosecution complained of, was in no way injured thereby. If the judgment was, as plaintiff claims, invalid, what injury could have been done him? He had been put to no trouble, expended no money, nor, prior to the payment to the sheriff, had his property or person been molested. Such payment was voluntary, with full knowledge of the facts, and was made for the purpose of compromising existing questions and ending litigation. A discount of more than one-fourth was made, and there seems to be no reason why such compromise should not be sustained under the repeated decisions of this Court; citing *Hull v. Swarthout*, 29 Mich. 253; *Prichard v. Sharp*, 51 Id. 432.

MORSE, J. This record presents the story of a most outrageous and wicked fraud, committed upon the plaintiff by an abuse of the processes of the law, and one deserving of severe punishment. The chief defendant, J. Reid Crowell, is said to be an attorney at law, and resides at Brooklyn, Jackson county, in this State.

The story, briefly told, is this: The defendant Randy June pretended to have a claim of $50 against the plaintiff, an old man over 60 years of age, and a farmer, living in the township of Manchester, Washtenaw county, which township adjoins the township of Norvell, in Jackson county, where June, a laborer, resided. In November,

1886, June put his claim in the hands of Crowell for collection. Crowell understood what the claim was for, told June it was collectible, and, as he (Crowell) testifies, was to have all he collected over $40. Without attempting to collect it without suit, Crowell went, January 3, 1887, to Joseph M. Griswold, a justice of the peace in the village of Brooklyn, Columbia township, Jackson county, and took out a summons in favor of June against Antcliff, who is the plaintiff in this suit. Such summons was made returnable January 11, 1887, and commanded the constable to summon Antcliff,—

"If he shall be found in your county, to answer to June in a plea of trespass on the case upon promises, to his damages $300 or under."

This summons was directed to any constable of Jackson county, and was handed by Crowell to one Brenner, a deputy-sheriff of Washtenaw county, to serve, he claiming that there was a new statute under which Brenner could make service in Washtenaw county. Brenner returned the summons as personally served upon Antcliff in the township of Manchester, January 4, 1887. The statute referred to is How. Stat. § 7216 (Act No. 246, Laws of 1879, p. 249). Between the day of this service and the return-day of the summons, Antcliff received an unsigned letter, stating that he had better not appear. The following is the letter:

"BROOKLYN, Feb. 3, 1887.
"MR. ANTCLIFF:
"Don't let Mr. Crowell or any one else fool you into coming into Jackson Co. All they serve those kind of papers on you for is to get you into this county; then they will serve another kind of summons on you. Look out for them."

In consequence of this communication, Antcliff did not appear. On the return-day June and Crowell were on

hand. No one else was present except the justice. His docket shows that plaintiff filed an affidavit on that day, stating, in substance, that he was a resident of the township of Napoleon, in Jackson county; that the defendant was a resident of Manchester, Washtenaw county; that the suit was commenced for the recovery of the value of personal services rendered by him for Antcliff, at the latter's request; and that Jackson and Washtenaw were adjoining counties. This affidavit was prepared by Crowell. Crowell also filed a declaration upon some of the common counts as follows:

"In the sum of $300, for goods, wares, and merchandise sold by plaintiff [June] to defendant [Antcliff], at his [defendant's] request, and in a like sum on account stated between them; and in the sum of $300 for work and labor performed by plaintiff for the defendant at his [defendant's] request."

No bill of particulars was filed. The justice's docket further shows as follows:

"After waiting one hour, and defendant not appearing, I proceeded to hear and try the cause. Plaintiff, being sworn in his own behalf, testified that he was a resident of the township of Napoleon, Jackson county, Michigan; that he was acquainted with John Antcliff, the defendant, who resides in Manchester, Washtenaw county, Michigan; that in the year 1886 he performed personal labor for the defendant at his (defendant's) request, which said personal labor was worth the sum of three hundred dollars; that the same was now due and unpaid.

"There being no witnesses on the part of the defense, and no one appearing for the same, and having waited one hour, therefore, after hearing the testimony of the plaintiff, and in pursuance of a statute approved May 31, 1879, entitled 'An act in relation to the commencement of actions relating to real estate, and for labor or services, and service of process therein,' which act, among other things, provides that in all actions wherein the demand shall be principally for labor or services performed by an individual or company, or commenced in any court of competent jurisdiction in the county where the

lands. may be situated, or wherein the labor or services were rendered or performed, or in which the plaintiff or plaintiffs reside, the process or declaration by which such action shall be commenced may be served within any county within this State adjoining that county in which such action shall be commenced, against any individual, company, or the proper officer of any corporation, within this State: *Provided*, That if such service shall be made in any other than such county where such action shall be commenced, service shall be made by the sheriff or any constable of the county where service shall be made, or by any person authorized to make such service, but the officer making such service being only entitled to fees for travel in his own county,—I hereby render judgment forthwith in favor of the plaintiff, Randy June, and against the defendant, John Antcliff, for the sum of three hundred dollars ($300) damages, and two dollars and sixty cents costs of suit.

"JOSEPH M. GRISWOLD,<br>"Justice of the Peace."

The justice testified, on the trial of the present suit, that the docket contains the substance of the testimony, and that no explanation or evidence was given before him, showing what the services and labor were, or any part thereof. Crowell asked the questions, and June answered. This Crowell admits.

Five days after the rendition of this judgment, Crowell appeared before the justice with a transcript of the judgment made out, and filed an affidavit, stating therein that there was due and owing upon said judgment the sum of $300, exclusive of costs, and that he had good reason to believe, and did believe, that there was not sufficient goods and chattels liable to execution to satisfy said judgment within the county of Jackson, belonging to said John Antcliff. The transcript was procured, and filed by him with the clerk of the circuit court of Jackson county on the same day. Execution was issued the same day on this transcript, and taken by Crowell to Ann Arbor, and put into the hands of William Walsh, sheriff of Washtenaw

county. It was there agreed between Crowell and the sheriff that the latter should meet him in the village of Manchester, on January 27, 1887, and they two then to go together to the farm of Antcliff, to collect the execution.

On the last-named day Crowell and his father-in-law, one Charles E. Parker, of Addison, Lenawee county, who is, or claims to be, a lawyer, met the sheriff at Manchester, and from there started for the farm of Antcliff. Upon the way there, they met Antcliff and his wife on their way to town. They informed Antcliff of the execution. He denied owing June a cent, but, upon threats of a levy, he and his wife went back to his farm with them. While there Crowell and Parker threatened to have the sheriff levy on the farm if the judgment·was not paid, as there was not, as they said, personal property enough to pay it. Antcliff, before going back to the farm, wanted to go on to the village, and see an attorney, Mr. Freeman, but he was told by all three of them that, if he did, they should go on to his farm and levy upon it. Considering the fact that Antcliff was a well to do farmer, with plenty of property out of which to make this execution, and that it had been in the hands of the sheriff for 10 days without any notice to Antcliff, the part played by this official, according to his own showing in his testimony, is not very creditable, to say the least. Finally, under the threats of Crowell and Parker to drive off his stock and to also levy on his farm, and also influenced by his scared wife, he settled the matter up by paying them $240 in cash. Out of this money Crowell paid the sheriff his fees; something (how much he does not tell) to another lawyer, Patchin, and $57 to June. The rest he seems to have put, where he thought it would do the most good, in his own pocket. It seems also that he paid $27 of this $57 to

June under a sort of duress. He testifies that June kept coming to him saying:

"'Now, if you don't pay me something, Hewett [attorney for Antcliff] has been to see me, and he says he will do the fair thing by me, and you ought to give me a little more out of that.' I can't tell how many times I gave him ten dollars. I gave him ten dollars twice, and I gave him seven dollars once."

Is not this a shameful story, much of it coming from his own lips, to appear in cold print against an attorney at law in our State? It is to be hoped that he has never been formally admitted to our courts. If he has, the attention of the bar of Jackson county is respectfully directed to the record in this case, and it is to be hoped that they will take notice of it by instituting the proper proceedings to disbar him; and the prosecuting attorneys of Jackson and Washtenaw counties should, if possible, find some means by which this conspiracy and fraud against this old man can be adequately punished.

The plaintiff brought this suit in the circuit court for the county of Jackson against Randy June and J. Reid Crowell. It was commenced by *capias ad respondendum,* April 5, 1887. May 18, 1887, a motion was made to discharge the defendants, on the ground that the affidavit for the writ did not set out a legal cause of action. December 17, 1887, this motion was denied. February 3, 1888, the plaintiff filed his declaration. It was served upon one of the firm of attorneys who appeared for the defendants in the above motion. The default of the defendants for not pleading was entered April 3, 1888. This default, as to the defendant J. Reid Crowell, was set aside upon stipulation of attorneys, filed September 26, 1888, and upon motion of the defendant J. Reid Crowell, in open court, October 1, 1888. The defendant Crowell pleaded the general issue. No plea was ever in-

terposed in behalf of June, and he stands defaulted for not pleading. It does not appear that he was present on the trial, nor was his testimony obtained by either party. After the testimony was all in, the substance of which has been heretofore given, the circuit judge, Hon. Erastus Peck, was of the opinion that, upon the pleadings and all the evidence, the plaintiff's action could not be maintained, and directed a verdict for the defendants. This ruling is alleged as error.

The declaration contains two counts, the first being, it is claimed by defendant's counsel, in form a count for malicious prosecution of a civil action against the plaintiff. The second count sets up the same state of facts as the first, and further avers that the defendants, in obtaining the summons, falsely and maliciously intended to so use it as to obtain an illegal and fraudulent judgment against the plaintiff for the sum of $300, and to obtain execution, and to use the same for the purpose of extorting the said amount of money from the plaintiff.

The declaration reads as follows:

"STATE OF MICHIGAN,
"CIRCUIT COURT FOR THE COUNTY OF JACKSON. } ss.
"Jackson county.

"John Antcliff, plaintiff in this suit, by Hewett & Freeman, his attorneys, complains of Randy June and J. Reid Crowell, defendants in this suit, being in custody, etc., of a plea of trespass on the case:

"For that whereas the said defendants heretofore, to wit, on the third day of January, A. D. 1887, at the township of Columbia, in said county, went and appeared before one Joseph M. Griswold, then and there being one of the justices of the peace in and for said county of Jackson, and then and there, before the said justice, falsely and maliciously, and without any reasonable or probable cause whatsoever, caused and procured the said justice to issue and grant him certain summons against the said plaintiff, and in favor of the said Randy June as plaintiff therein, as follows, to wit:

"'STATE OF MICHIGAN, } ss.
County of Jackson.
"'To any constable of said county, greeting: In the name of the people of the State of Michigan, you are hereby commanded to

summon John Antcliff, if he shall be found in your county, to appear before me, one of the justices of the peace in and for said county, at my office in Columbia, on the 11th of January, A. D. 1887, at 10 o'clock in the forenoon, then and there to answer to Randy June, in a plea of trespass on the case upon promises, to his damage three hundred dollars or under.

"'Hereof fail not, but of this writ, with your doings, make return according to law.

"'Given under my hand at Columbia, Jackson county, this third day of January, A. D. 1887.

"'JOSEPH GRISWOLD,
"'Justice of the Peace.'

"And the said defendants afterwards, to wit, on the same day of the date of said summons, delivered the same to one Michael Brenner, who claimed to be a deputy-sheriff of the county of Washtenaw, and then and there, without any reasonable or probable cause whatever, caused and procured the said pretended deputy-sheriff of the county of Washtenaw to serve the said summons, so issued as aforesaid by said justice of the peace, upon the plaintiff in the said county of Washtenaw, he, the said plaintiff being then and there a resident of the said county of Washtenaw, and not of the county of Jackson; and the said Michael Brenner, as such deputy-sheriff, as aforesaid, returned the said summons to the said justice on or before the return-day thereof, with a return of personal service thereon indorsed by him, and filed the same with the said justice of the peace; and afterwards, to wit, on the 11th day of January, 1887, the said defendants, without any reasonable or probable cause whatsoever, caused and procured the said justice of the peace then and there to give and enter in his docket a judgment in favor of said Randy June, and against this plaintiff, for the sum of three hundred dollars damages and two dollars and sixty cents costs of suit, they, the said Randy June and J. Reid Crowell, knowing that the said justice had no jurisdiction of the said pretended cause, so pending before him.

"And thereupon the said defendants afterwards, to wit, on the 17th day of January, A. D. 1887, falsely and maliciously, and without any reasonable or probable cause whatsoever, went and appeared before said justice of the peace, and then and there made and filed with the said justice an affidavit of the said J. Reid Crowell, for the purpose of obtaining a transcript of the said pretended judgment to be filed in the office of the clerk of the circuit court for the county of Jackson, and then and there obtained such transcript of said justice, in due form, duly certified by said justice; and afterwards, to wit, on the same day last mentioned, they, the said defendants, caused and procured the said transcript, so obtained as aforesaid, to be filed in the office of the circuit court for the county of Jackson, and the same was by the said clerk then and there duly entered and docketed as a judgment of the

circuit court for the county of Jackson; and, at the same time of entering and docketing said transcript judgment, they, the said defendants, falsely and maliciously, and without any reasonable or probable cause whatsoever, caused and procured the said clerk of the circuit court for the county of Jackson to issue an execution upon said pretended judgment, in due form, dated the said 17th day of January, and directed to the sheriff of the county of Washtenaw, and afterwards, on the same day last aforesaid, went and delivered the said execution to William Walsh, then sheriff of the said county of Washtenaw.

"And afterwards, to wit, on the 27th day of January, A. D. 1887, the said defendants caused and procured the said sheriff of Washtenaw county to go and enter upon the premises of the plaintiff, and then and there to demand from said plaintiff payment of the said execution, and then and there threatened the said plaintiff that, if he did not immediately pay the same, then the said sheriff should and would at once levy upon and seize all of the personal property of said plaintiff upon said execution, and sell the same to make the amount thereof; and the said defendant J. Reid Crowell was then and there present with the said sheriff, aiding as the attorney and agent of the defendant Randy June, and assisting and directing the said sheriff, and then and there stated to the plaintiff that said execution was good and valid, and he would have to pay the same; and then and there, by means of said representations last mentioned, and the threats aforesaid, so made by said sheriff, to seize and sell the property of said plaintiff, they, the said defendants, falsely and maliciously, and without any reasonable or probable cause whatsoever, procured and forced the said plaintiff to pay to the said defendants, against his will, a large sum of money, to wit, the sum of two hundred and forty dollars, as satisfaction of said pretended execution and the pretended judgment upon which the same was issued, and the plaintiff did then and there pay the same to the said William Walsh, sheriff as aforesaid, and the said defendant J. Reid Crowell, attorney for said defendant Randy June, then and there received the same in full satisfaction aforesaid.

### SECOND COUNT.

"And whereas, also, the said defendants, without having any reasonable or probable cause for so doing, but contriving and intending to harm, oppress, and injure the said plaintiff, falsely and maliciously went and swore out a summons in favor of said defendant Randy June, and against the plaintiff, before Joseph M. Griswold, a justice of the peace of the township of Columbia, in said county of Jackson, on the 3d day of January, A. D. 1887, and returnable before said justice on the 11th day of said January, 1887, at 10 o'clock in the forenoon of that day, they, the said

defendants, then and there well knowing that the said pretended plaintiff in said suit had no just cause of action whatever against the said plaintiff of any kind, and that said plaintiff resided in the county of Washtenaw, and not in said county of Jackson, and they, the defendants, then and there falsely and maliciously intending to so use the said summons, so issued as aforesaid, as to obtain an illegal and fraudulent judgment against the said plaintiff for a large amount of money, to wit, the sum of three hundred dollars, and to obtain an execution, and to use the same for the purpose of extorting the said amount of money from said plaintiff.

" And such proceeding were thereupon had that afterwards, to wit, on the said 11th day of January, A. D. 1837, the said defendants appeared before the said justice at his office in said township of Columbia, at the hour mentioned in the said summons for the return thereof, and then and there caused and procured the said justice to enter and docket a judgment in favor of said Randy June, and against the plaintiff, for the sum of three hundred dollars damages and two dollars and sixty cents costs of suit, which said pretended judgment was illegal, fraudulent, and void, as said defendants well knew; and the said defendants afterwards, to wit, on the 17th day of January, 1887, falsely and maliciously caused and procured the said justice to make and issue a transcript of said pretended judgment in due form, and duly certified by said justice, and afterwards, to wit, on the same day last mentioned, filed the said transcript in the office of the clerk of the circuit court for the county of Jackson, and then and there caused the said clerk to enter and docket the same as a judgment of the circuit court for the county of Jackson; and, at the same time of entering and docketing said transcript judgment, the said defendants caused and procured the said clerk of the circuit court to issue an execution upon said pretended judgment in due form, and directed to the sheriff of said county of Washtenaw, and on the same day delivered the said execution to William Walsh, sheriff of said Washtenaw county; and afterwards, to wit, on the 27th day of January, 1887, the said defendants caused and procured the said William Walsh, sheriff as aforesaid, to proceed to collect the said execution from the plaintiff, and force him, the said plaintiff, to pay the same; and the said plaintiff, then and there, against his will, and protesting that he was not liable to pay the same, or any part thereof, was forced and compelled by said sheriff, in order to protect his property from levy and sale, to pay the same to him, and did pay to him, for said defendants, the sum of two hundred and forty dollars in money,—all which said several grievances in this court mentioned were done and committed by said defendants against the plaintiff, falsely and maliciously, and without any reasonable or probable cause whatsoever.

" By reason of which said several premises the said plaintiff has been and is greatly injured, and put to large expense and trouble, and to great anxiety, and has been and is otherwise greatly injured in his credit and circumstances, to the damage of the plaintiff of five thousand dollars, and therefore he brings this suit.

" Hewett & Freeman, Plaintiff's Attorneys.<br>"Austin Blair, of Counsel."

It is claimed by defendant's counsel that the declaration is not good for malicious prosecution, first, because it alleges that an erroneous judgment was taken, and jurisdiction was lacking in the court resorted to, and that the facts show that the plaintiff denied the jurisdiction of the justice, and refused to participate in any manner in the proceedings directly produced by the prosecution; that he was therefore in no wise injured by the commencement of this suit, and the taking of this judgment; also, that no case can be found where an action for malicious prosecution has been sustained, where the pleadings show a determination in the original action against the party claiming damages for malicious prosecution.

The facts in the case do not show that plaintiff denied the jurisdiction of the justice, and refused to participate in the proceedings on that account. It is true, he did not appear because of the letter he received (which was probably sent to him by Crowell, or a confederate, and which the court erred in not admitting in evidence); but afterwards, when the parties came to him with an execution issued upon a pretended judgment, docketed in the circuit court for the county of Jackson, and he was prevented from seeing an attorney, he was led to believe the judgment was a good one, and acted accordingly, and the purpose of the conspirators was accomplished; and the fact of the court not having jurisdiction, when it was not known by him at the time the injury by such prosecution was inflicted, cannot be used as a bar against his relief or remedy for such injury.

In *Sweet v. Negus,* 30 Mich. 406, it was held that, where the want of jurisdiction did not appear upon the face of the warrant, it could not bar the action, and the point whether, when the justice had by law no jurisdiction of the subject-matter, or a total want of jurisdiction otherwise appears upon the face of the warrant, the proceedings could properly be called a prosecution, was expressly not passed upon. I am satisfied, however, that if the wrong and injury is done by a malicious suit it is immaterial, upon principle, whether the court had jurisdiction or not to entertain such suit. For every malicious wrong there is certainly in this day and age a remedy; and, under our liberal system of pleading in this State, a plain and clear statement of the facts constituting the wrong is sufficient, and it is but little matter, in actions of trespass on the case, what the action is named or called.

The first count of the declaration plainly shows a malicious and actionable wrong, and every averment was supported by cogent proof. It may be that the prosecution of the suit to judgment in the justice's court by itself alone did not touch the person or property of the plaintiff, but the writer of this opinion, in *Brand v. Hinchman,* held that it was not necessary, in an action for the malicious prosecution of a civil suit, that the person should be molested or property seized, if it appeared that the suit was malicious, and without probable cause, and the party had been injured or damaged thereby. See 68 Mich. 596–598, and cases there cited. I am still of the opinion there expressed, and have been fortified in my position by the facts of this case, and the decisions of other courts, not cited in *Brand v. Hinchman. McPherson v. Runyon,* 41 Minn. 524 (43 N. W. Rep. 392); *Pope v. Pollock,* 46 Ohio St. 367 (21 N. E. Rep. 356); *Allen v. Codman,* 139 Mass. 136. See, also,

discussion of this question by J. D. Lawson in 21 Amer. Law Reg. 281, 353.

It is true that the general rule is that, to support an action for malicious prosecution, the plaintiff must establish three things:

1. The fact of the alleged prosecution, and that it has come to a legal termination in the plaintiff's favor.
2. That the defendant had not probable cause.
3. That he acted from malicious motives. *Hamilton v. Smith*, 39 Mich. 222, 225.

In the case before us, the defendants had no probable cause against Antcliff. It was conclusively shown that June never had any claim against Antcliff, except one for $50 for getting him a wife, and never pretended to have any other; and from Crowell's own testimony it is apparent that he knew this. He testified that June told him of some other items of account, but he cannot remember any except the one of $50. The judgment was taken for $300. Witness swore that June told him he did this because Crowell told him he might just as well get a judgment for $300 as for $50. Crowell does not deny this in his testimony. The taking and collecting of a judgment for $300, under these circumstances, shows malice.

But the defense urge that the other element is wanting; that the proceeding or suit did not terminate in plaintiff's (Antcliff's) favor. In this case, however, the judgment was void upon the face of the justice's docket and files. The summons was not issued under How. Stat. § 7317. It was directed to any constable of Jackson county, and could not be served by an officer of Washtenaw county, the same as in any ordinary suit. The making of the affidavit upon the return-day of the summons, and the judgment entry attempting to bring the case within section 7317, were futile. When a suit is commenced under

this section, and the defendant is not a resident of the county where suit is brought, and it is intended to gain jurisdiction by service in the adjoining county, the process must be issued directed to an officer of that county. He has no power to serve process directed to a constable of another county, unless specially authorized so to do by law. It was not intended by the Legislature that an ordinary justice's summons, directed to any constable of the county within which the justice has jurisdiction, could be taken by the plaintiff, and handed to a constable or sheriff of another county for service, without some showing upon the writ that the suit was intended to be brought under section 7317. The act, if valid, is a special one, and applies only to special cases. The whole thing was a fraud from the beginning. The labor and services spoken of were not a valid claim if performed, as it would be against public policy to allow marriage brokerage.

But it is not necessary to determine whether the first count was a good one, in an action for malicious prosecution. It sets out fully a conspiracy between the defendants, June and Crowell, to defraud the plaintiff, and that he was defrauded out of the money paid upon this void judgment. It therefore clearly sets out an actionable wrong,—one that can be recovered for in an action upon the case,—and it is immaterial what it is called.

The second count is also good. If process is willfully made use of for a purpose not justified by the law; this is an abuse for which an action will lie. See Cooley, Torts, and cases cited, 189, 190. I can conceive of no case of any greater abuse of process than this. There was nothing to base it upon in the beginning, and it was procured, in every stage of the proceeding thereafter, by fraud and perjury, which ought to be punished by a term in State prison to both of the defendants. It was used for no lawful or legitimate purpose. If "entering up a

judgment and suing out execution after the demand is satisfied" is an abuse of process (*Barnett v. Reed*, 51 Penn. St. 190), then, certainly, obtaining a judgment by fraud and perjury, when there was never any demand in favor of June against Antcliff, and suing out an execution upon such judgment, when the defendants knew that it was false and fraudulent, and extorting money under such execution, is also an abuse of process.

The learned judge of the Jackson circuit was in error in directing a verdict for the defendants. The judgment of the court below is reversed, and a new trial granted the plaintiff, with costs of this Court.

The other Justices concurred.