## KOOL v. LEE.

No. 2463.   Decided August 16, 1913 (134 Pac. 906).

1. PROCESS—ABUSE OF PROCESS—ACTION—SUFFICIENCY OF COMPLAINT. A complaint alleging that defendant, with, malice and without probable cause, filed a complaint before a justice charging plaintiff with disturbing the peace, caused a warrant of arrest to issue, procured the justice to so indorse it as to permit it to be served in the nighttime, caused defendant to arrest plaintiff thereunder in the nighttime, and to confine her in jail from one evening until the next afternoon, when she was arraigned, entered a plea of not guilty, and was released on her own recognizance, that subsequently the case without a hearing was dismissed on motion of the state, that defendant did not intend to prosecute such criminal proceedings, but intended to use the process of the court and such proceedings, and did use them for the purpose of evicting plaintiff and her husband from certain premises whereon they were living, stated facts sufficient to establish a cause of action for abuse of process.   (Page 395.)

2. PROCESS—ABUSE OF PROCESS—ELEMENTS.   In an action for abuse of process it is not necessary to allege or prove a termination of the action, want of probate cause, or malice; there being no such thing as probable cause for a willful and intentional misuse of process for a wrongful or unlawful object or ulterior purpose not intended by the law.   (Page 402.)

3. PROCESS—ABUSE OF PROCESS—ELEMENTS.   In an action for abuse of process there must be allegations and proof of a willful or intentional abuse or misuse of process for a wrongful or unlawful object or ulterior purpose not intended by the law.   (Page 403.)

4. PROCESS—ABUSE OF PROCESS—ELEMENTS.   Where defendant verified a complaint charging plaintiff with a misdemeanor, and caused her arrest and confinement in jail, not to vindicate the law or to punish her for the offense charged, but for the wrongful purpose and ulterior object of evicting her and her husband from, and putting defendant in, possession of certain premises, and by such misuse of process did in fact dispossess

her and her husband, and put himself in possession, whereupon the criminal proceedings ceased, and were dismissed, there was an actionable abuse of process. (Page 404.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Gerarda C. Lomme Kool against J. W. Lee.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Smith & McBroom* for appellant.

*N. W. Sonnedecker,* and *M. E. Wilson,* for respondent.

STRAUP, J.

This is an action to recover damages for an alleged malicious prosecution and abuse of process. In the complaint, among other allegations, it is alleged that the defendant, with malice and without probable cause, filed a verified complaint before a justice charging the plaintiff with disturbing the peace, a misdemeanor, caused a warrant of arrest to issue, procured the justice to so indorse it as to permit it to be served in the nighttime, caused the sheriff to arrest the plaintiff thereunder in the nighttime and to confine her in a cell in jail from 7 o'clock p. m. on the 3d day of January until 3 o'clock p. m. the next day, when she was arraigned, entered a plea of not guilty, and was released on her own recognizance, and that on the eighth of January the case without a hearing was dismissed on motion of the state. It is further alleged that the defendant intended "not in any way to prosecute the criminal proceedings caused to be instituted against the plaintiff, but intended to use the process of the court and of said proceedings, and did use the same for the purpose of evicting the said plaintiff and her husband from certain premises whereon they were living at the time of the occurrence of the matters and things herein

complained of." The answer is a general denial. The case was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff for $500 actual damages and $100 exemplary damages. The defendant appeals.

The assignments principally relate to the charge; the defendant contending that the complaint and the evidence but showed a case for malicious prosecution and not for an abuse of process, but that the court let the case to the jury on the theory of an abuse of process, and erroneously charged that to maintain such an action allegations and proof of malice and want of probable cause were not essentials.

The evidence on this shows that the plaintiff's husband was in the employ and was a tenant of the defendant, occupying and residing with plaintiff on premises owned by the defendant. A controversy arose between him and them as to an amount due them from him, and also, as claimed by the defendant, with respect to the care of the premises and live stock kept thereon. The defendant himself testified that he had no trouble with them prior to the 24th of December, when he visited the premises. On the 25th he, in writing, notified the plaintiff's husband that "the manner in which you are doing my work at the farm does not meet with my approval, and you will hereby consider yourself discharged and turn over everything pertaining to the farm at once to the bearer of this note, and I hereby request you to vacate the house at your earliest convenience. . . . After you vacate the house, and I find that you have left everything in good condition, you may come to the store and I will settle with you." On the next day, the 26th, the defendant sent plaintiff's husband another notice: "You are hereby legally notified to vacate my house at the above address within three days from the above date." The day following, the 27th, the plaintiff's husband called at the defendant's store, claimed that the defendant owed him sixty-five dollars, demanded that amount, and refused to vacate the premises until it was paid. The defendant denied owing him more than twenty dollars, and offered to pay that, which plaintiff's husband refused to accept. Then, on the 29th, the defendant, through

an attorney, caused another written notice to be served on plaintiff's husband, which recited that "you have broken your contract with J. W. Lee (the defendant), and have been duly notified to vacate the premises," describing them, and that, "notice having expired on December 28, you are hereby legally notified that the rent for occupation of said house commences to-day, December 29, and will be thirty-five dollars per month, payable in advance. Under the laws of the State of Utah, demand is hereby made on you in writing for rent now due on said house as stated above, or in lieu of the rent, as aforesaid, you are notified to vacate the house within three days of the date first above written. To stop further proceedings please comply with the terms of this notice at once." On that day, whether before or after the last notice was served is not made to appear, the plaintiff called at the store of the defendant, again demanded from him sixty-five dollars, and refused to vacate the premises until it was paid. Defendant again offered to pay twenty dollars, which offer was again refused. According to the testimony in behalf of the plaintiff, she and her husband did nothing ex-except to demand the money, and refused to vacate the premises until it was paid. The defendant and other witnesses on his behalf testified that the plaintiff at the store grew angry and excited, talked in a loud tone of voice, paced the floor, shook her fist in the defendant's face, and stated that she would beat him and shoot him if he did not pay the money.

On the 3d day of January the defendant called on the sheriff and his deputy. He told the sheriff that he had had some trouble with the plaintiff and her husband over property; that he wanted to get them off the place; that they were not living up to their contract with him; that they were not satisfactory tenants; and that he did not want them there. The sheriff informed him that he would have nothing to do with the matter until proper papers had been made out. The defendant also told the sheriff that plaintiff's husband had threatened him, and after he had procured the warrant of arrest stated that both the plaintiff and her husband had

threatened him. The defendant also stated to the deputy that the plaintiff and her husband had caused him a great deal of trouble; that they had been at his store bothering him, had made charges against him, and had threatened to beat him up, and to shoot him. He was advised to see the county attorney. The defendant, unacquainted with the county attorney, requested the deputy to take him to the office of the county attorney, where a complaint was prepared charging the plaintiff and her husband with disturbing the peace at the defendant's store. The defendant took the complaint to a justice and there verified it. The justice issued a warrant of arrest and delivered it to the defendant.

Our statute provides that, if the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate indorsed upon the warrant, or unless the offense is committed in the presence of the person making the arrest. The justice made such an indorsement on the warrant. He testified that he could not remember the circumstances of making it, and could not remember any conversation had with the defendant concerning it, but that he did not make it on his own motion, and generally made such indorsements at the request of the officer serving the warrant, or some one representing him.

The defendant, after receiving the warrant, gave it to a deputy sheriff. In pursuance of the warrant the sheriff, two deputies, and the defendant, at about eight o'clock at night on the 3d day of January, proceeded to the place occupied by the plaintiff and her husband, the premises in question. On this point the defendant himself testified:

"After I procured this warrant with the indorsement on it, I went right down to the sheriff's office with four men in the automobile; I don't know whether they were all deputy sheriffs or not; I pointed out the house where Mr. and Mrs. Kool (plaintiff) lived, and then went away; I did not go into the house; I saw some enter the house; I don't know what became of Mrs. Kool and Mr. Kool that night; I can-

not say I gave it a thought; I didn't know that they would be put in jail; I knew they would be arrested; at least I expected them to be arrested. . . . I understood that the warrant was going to be served in the nighttime when I left the sheriff's office, having got that understanding in this way. He (the sheriff) requested me to go down with him, and I told him that I would have to go that evening, as I would be unable to go the next morning; I understood that they were to be arrested that evening."

"After the place was reached, and the premises pointed out by the defendant, he left, and, according to his own testimony, "made no further inquiry about it until the next morning." The sheriff and his deputies arrested the plaintiff and her husband, took them in custody, and, without taking them before the justice, confined them in jail, placing them in separate cells, the plaintiff with a female prisoner. They were so confined and detained until three o'clock on the next day, when they were taken before the justice, entered a plea of not guilty, and were released on their own recognizance.

In the meantime the defendant, as testified to by himself, the first thing the next morning after the arrest, directed his teamster to take a load of goods to the premises theretofore occupied by the plaintiff and her husband, to enter and take possession, and, if necessary, to set aside their things, but not to damage them in any way. In pursuance of that direction, the teamster entered and took possession, removed the goods of the plaintiff and her husband from the house, put them in a shanty, and placed his own things in the house. After the plaintiff and her husband were released and went to their home, they found the doors locked, themselves evicted and dispossessed, their goods in the shanty, and the defendant in possession.

They were requested by the justice to appear on the 8th for trial. They on that day appeared ready for trial. The county attorney appeared, but the defendant was absent. The case, on motion of the county attorney, was dismissed, and the plaintiff and her husband discharged. The defend-

ant testified that he had intended to prosecute the plaintiff and her husband on the charged offense, and had failed to appear because the county attorney, when the complaint was filed, had agreed to notify him of the time of the trial, but had failed to do so, and for that reason he was not present with his witnesses to prosecute the case. This was denied by the county attorney, who also testified that the defendant had not told him anything about the controversy between himself and the plaintiff and her husband over the possession of the premises, or their dispute over the amount due, and:

"If anything had been said to me by Mr. Lee (the defendant) with regard to his desiring a complaint to the end that he wanted to put persons off his premises, we would not have issued the complaint. That complaint would not have been issued, if the complaining witness (the defendant) had stated to me that the object of issuing the complaint was to settle difficulties with regard to the premises."

The defendant, however, testified that he told the county attorney all the facts concerning his trouble and controversy with the plaintiff and her husband. Suffice it to say the evidence with regard to this is in conflict. But the only reason given by the defendant for not prosecuting the criminal action was that he relied on the promise of the county attorney to notify him of the time of the trial, and hence made no inquiry to see what had become of the case, and was not concerned about it, except as testified to by him. About ten days or two weeks after the case had been dismissed he telephoned the deputy sheriff who, as testified to by the defendant, told him he did not know when the case would be called for trial. Defendant further testified that he had intended and was willing and ready to prosecute the case, and had no knowledge that it had been dismissed until the time of this trial, nearly two years after the case had been dismissed, when he heard the testimony of the justice to that effect.

The court, in submitting the case to the jury, among other things, charged them:

"(3)    This is an action as alleged for malicious abuse of legal process, and the plaintiff, in order to recover, must

prove by a preponderance of the evidence that a criminal process was issued against her substantially as alleged in her complaint, and that after it was issued the defendant caused said process to be used, not for the purpose of vindicating the criminal law, but for the purpose of evicting the plaintiff and her husband from certain premises where they were living at the time."

The court further charged that to entitle the plaintiff to recover it was not only necessary to prove "that the defendant had an ulterior motive other than a purpose to vindicate the criminal law, to wit, the design of evicting the plaintiff and her husband from the premises, but that she was also required to prove some act on the part of the defendant, or at his instance or request, in the use of such criminal proceedings, other than such as would be proper in the regular prosecution of the charge," and that the defendant could "not be held responsible for merely setting the criminal law in motion and causing the arrest of the plaintiff and holding her in custody, even though such acts were done with the ulterior motive of evicting her from the premises of the defendant, but in order to recover the plaintiff must further show some distinct act or omission, as set forth in the complaint, accomplished at the instance or request of the defendant, which amounted to a misuse or abuse of the process after it had been issued."

The court also charged:

"(6) In order for the plaintiff to recover for malicious abuse of process it is not essential for her to prove that the defendant acted maliciously or without probable cause, that is, so far as sustaining the right to recover is concerned; but the proofs, if any, tending to show malice and want of probable cause, are to be considered in case you find she is entitled to recover, when you consider the question of the amount of damages, if any, you find in her favor."

But the court also charged the jury that, if the plaintiff willfully disturbed the peace and quiet of the defendant at his store by loud and unusual noise, by offensive conduct, or

43 Utah 26

by threatening the defendant, such conduct constituted probable cause, and gave the defendant the right to prosecute the plaintiff for such disturbance of the peace, and that:

"The element of probable cause for the prosecution must be found in favor of the defendant. In other words, such conduct of the plaintiff would make her guilty of disturbing the peace, and there would be no question of the defendant having probable cause or of his right to cause her to be prosecuted therefor."

The court further charged that, while one arrested on a criminal complaint had the right to be taken before a magistrate without unnecessary delay, and an opportunity given to give bail, and though the jury might find that the plaintiff was unnecessarily arrested in the nighttime, and unnecessarily confined without an opportunity to give bail, yet the defendant would not be liable for that, unless caused at his instance and request, and done with the design to evict the plaintiff and her husband, and not to vindicate the criminal law.

The contention of the defendant is:

(1) That the complaint stated a cause of action, not for an abuse of process, but one for malicious prosecution, to maintain which it was not only necessary to allege, but also to prove, malice and want of probable cause; and (2) that, in an action for abuse of process, it also is necessary to allege and prove malice and want of probable cause, and that the court erroneously charged the jury that in such an action those elements were not essential. We think the complaint states facts sufficient to constitute an action for both malicious prosecution and abuse of process. True, they were not alleged in separate counts; but no advantage was taken of that.

The court, however, let the case to the jury on the theory only of an abuse of process, and not for malicious prosecution, as appears by paragraphs 3 and 6 of the charge, and, as has been seen, the court charged that to sustain such an action it was not necessary to allege or prove malice, or want of probable cause, except in support

of the alleged claim of exemplary damages. In an action for an abuse of process, the authorities are in conflict as to whether it is essential to allege and prove malice, and some seem to hold that it is necessary to allege and prove want of probable cause. (19 A. & E. Enc. Law, 632; 32 Cyc. 542; *Nix v. Goodhill,* 95 Iowa, 282, 63 N. W. 701, 58 Am. St. Rep. 434; *Hearn v. Shaw,* 72 Me. 193; *Humphreys v. Sutcliffe,* 192 Pa. 336, 43 Atl. 954, 73 Am. St. Rep. 819; *Norcross v. Otis Bros. & Co.,* 152 Pa. 481, 25 Atl. 575, 34 Am. St. Rep. 669.)

We believe the weight of authority to be that in an action for an abuse of process it is not essential to aver or prove a termination of the action, want of probable cause, or malice. There must, of course, be allegations and proof of a willful or intentional misuse or abuse of process, a **3** willful and intentional misuse of it for some wrongful and unlawful object, or ulterior purpose not intended by the law to effect. From such a use or employment of the process the law itself implies malice. Clearly, in such case, want of probable cause is not an essential, for there can be no such thing as probable cause for a willful and intentional misuse of process for a wrongful or unlawful object or ulterior purpose not intended by the law to effect.

In the case of *Railroad Company v. Hardware Company,* 143 N. C. 54, 55 S. E. 422, the court, in referring to cases and quoting from texts, said:

"It may be as well to note here the distinction between an action for malicious prosecution and an action for abuse of process. In an action for malicious prosecution there must be shown (1) malice, and (2) want of probable cause, and (3) that the former proceeding has terminated. *Railroad v. Hardware Company,* 138 N. C. 174 (50 S. E. 571). In an action for abuse of process it is not necessary to show either of these three things. By an inadvertence it was said in the case last cited that want of probable cause must be shown. 'If process, either civil or criminal, is willfully made use of for a purpose not justified by the law, this is an abuse for which an action will lie.' 1 Cooley, Torts (3d Ed.), 354. 'Two elements are necessary: First, an ulterior purpose; second, an act in the use of the process not proper in the regular prosecution of the proceedings.' *Id.* 355; 1 Jaggard, Torts, sec.

203; Hale on Torts, sec. 185. 'An abuse of legal process is where it is employed for some unlawful object not the purpose intended by law. It is not necessary to show either malice or want of probable cause, nor that the proceeding had terminated, and it is immaterial whether such proceeding was baseless or not.' *Mayer v. Walter,* 64 Pa. 283. The distinction has been clearly stated. *Jackson v. Telegraph Company,* 139 N. C. 356 (51 S. E. 1015, 70 L. R. A. 738)."

To the same effect are also the following: *Page v. Cushing,* 38 Me. 523; *Mayer v. Walter,* 64 Pa. 283; *Bonney v. King,* 201 Ill. 47, 66 N. E. 377; *Antcliff v. June,* 81 Mich. 477, 45 N. W. 1019, 10 L. R. A. 621, 21 Am. St. Rep. 533; *Sneeden v. Harris,* 109 N. C. 349, 13 S. E. 920, 14 L. R. A. 389; *Bartlett v. Christhilf,* 69 Md. 219, 14 Atl. 518; *Jeffery v. Robbins,* 73 Ill. App. 353; *Dickerson v. Schwabacher* [Ala.] 58 South. 986; *Docter v. Riedel,* 96 Wis. 159, 71 N. W. 119, 37 L. R. A. 580, 65 Am. St. Rep. 40; *Wood v. Graves,* 144 Mass. 365, 11 N. E. 567, 59 Am. Rep. 95; *Ingalls v. Christopherson,* 21 S. D. 574, 114 N. W. 704.

We think the charge with respect to this question substantially stated the law. In some of the cited cases expressions are found to the effect that an action for abuse of process lies for the improper use of process after it has been issued, and not for maliciously causing process to be issued. And on that it is argued the defendant, on the theory of an abuse of process, cannot be held responsible for maliciously causing the arrest of the plaintiff, but only for some improper use made of the warrant with the knowledge and consent of the defendant after it was issued. As to that it is enough here to say the court so charged the jury. The defendant therefore had the benefit of that proposition as claimed by him.

Then, also, says the defendant, there is a want of evidence to show that an improper use was made of the warrant after it was issued. For it is argued that nothing was done under the warrant but to arrest and imprison the plaintiff in the nighttime, which was the making of a proper and lawful use of it (the justice having by indorsement directed that it might be served in the night), and that no object was con-

templated to be gained by it other than its proper effect and execution. The defendant testified that he had no object or purpose in view other than to arrest, and imprison, and prosecute the plaintiff for the offense charged. If that were true, and if no other use in fact was made of the warrant and the processes of the criminal law, of course he is not liable in an action for an abuse of process, no matter how bad may have been his intentions, or his motives of malice, in instituting the criminal proceedings, and causing the arrest of the plaintiff. In such case he would be liable for malicious prosecution on averments and proof of malice, want of probable cause, and termination of the proceedings. But here there are averments, and there is evidence to support them, that the criminal proceedings were instituted and the warrant of arrest procured and used, or caused to be used, by the defendant, not to vindicate the law, not to arrest and punish the plaintiff for the charged offense, but for a wrongful and unlawful purpose and ulterior object, to evict the plaintiff and her husband from, and to put the defendant in possession of, the premises—a purpose not intended by the law to effect by such a process—and by such misuse of the process the defendant in fact did evict and dispossess the plaintiff and her husband and put himself in possession, and, having accomplished that, the criminal proceedings ceased and were dismissed. We think that is an abuse of process and is actionable.

The case of *Sneeden v. Harris, supra,* in its facts is much like the case here. There a criminal action was instituted against the plaintiff, his arrest and imprisonment procured for an alleged ulterior purpose, to evict him from premises occupied and possessed by him, and to put the defendants in possession, and by the employment of such process the defendants in fact did evict him and put themselves in possession. An action for an abuse of process on such facts was held proper.

The case of *Antcliff v. June, supra,* is also in point. There a baseless civil suit was instituted, a judgment by fraud and perjury obtained against the plaintiff, an execution and a

threat of levy made, all for the alleged ulterior purpose of extorting money from him. He, to protect his property from levy and sale, paid the unlawful demand so made by the defendants. The plaintiff had declared on two counts, the first for malicious prosecution, the second, an abuse of process. Mr. Justice Morse, in speaking for the court, said:

"The second count is also good. If process is willfully made use of for a purpose not justified by the law, this is an abuse for which an action will lie. See Cooley on Torts, and cases cited, 188-190. I can conceive of no case of any greater abuse of process than this. There was nothing to base it upon in the beginning, and it was procured, in every stage of the proceeding thereafter, by fraud and perjury, which ought to be punished by a term in state prison to both of the defendants. It was used for no lawful or legitimate purpose."

It however, matters but little what name is given to the conduct here complained of and shown by the evidence. It certainly is a wrong. From the commission of it the law implies malice. There can be no such thing as probable cause for willfully and intentionally committing it, and using the criminal law and its processes for such a purpose and the accomplishment of objects as here alleged and shown by the evidence. The law is not and ought not to be so feeble as not to give ample redress for injuries from such wrongs.

We think the judgment of the court below ought to be affirmed. Such is the order, with costs.

McCARTY, C. J., and FRICK, J., concur.