BARLOW *v.* LINCOLN-WILLIAMS TWIST DRILL CO.

1. GARNISHMENT—ASSIGNMENT—ABUSE OF PROCESS—VALIDITY.

The owner of a right of action against a foreign corporation is entitled to assign his claim to a person within the State and thereafter the assignee becomes the legal owner and entitled to bring suit and to garnishee the assignor or any one else whom he believes to be indebted to the principal defendant. It was not an abuse of process to cause the writ of garnishment to issue against plaintiff's assignor where neither the defendant nor his property was inveigled into the State by fraud, or attached under process of the court issued for one purpose but used for another. 3 Comp. Laws, §§ 10054, 10600 (5 How. Stat. [2d Ed.] §§ 12704, 13436).

2. PLEADING—VARIANCE—CONTRACTS—INSTRUCTION.

Proof that defendant agreed to do everything possible to take certain steel within a reasonable time was not such a variance from the declaration which alleged that the defendant contracted to accept the steel within a reasonable time, as to require the court to direct a verdict on that ground upon the objection of the defendant; and, in any event, where the defendant claimed it refused to accept the steel because of its inferior quality, the objection was without force.

3. SALES—CONTRACTS—BREACH—REASONABLE TIME.

Where the defendant entered into a contract to purchase 25 tons of "high speed" steel at a stated price, and to do everything possible to take it within a reasonable time, and, during a period of a year and eight months, only a small amount of steel was used, much less than the amount contracted for, the defendant assigning as a reason that the steel was not up to standard and the evidence tending to show that the capacity of defendant's mill and the volume of business was such that the entire amount of steel for which defendant had contracted might have been used, also that in the course of the correspondence the defendant gave as a reason for failing to buy the steel that plaintiff had refused to pay for drills received from the defendant; *held*, to present issues for

the jury upon the question. of reasonable time and of the good faith of defendant in rejecting the material.

4. SAME—BREACH—EVIDENCE.

Where defendant refused to. accept any further steel because it was inferior in grade and in fact. it had bought less steel than the contract called for, the question whether a reasonable time had elapsed within which to comply with the contract was' immaterial to plaintiff's right to recover.

5. SAME—NEW TRIAL.

Held, that the verdict was not against the weight of the evidence.

Error to Wayne; Hally, J. Submitted January 21, 1914. (Docket No. 20.) Decided June 7, 1915.

Assumpsit by Adolph Barlow against the Lincoln-Williams Twist Drill Company for the breach of a contract of sale. Judgment for plaintiff. Defendant brings error. Affirmed.

*Henry B. Graves*, for appellant.

*Sloman & Sloman*, for appellee.

BIRD, J. This is an action to recover damages from defendant for its refusal to accept and pay for 25 tons of high-speed steel, which it contracted for in writing, with the firm of Lowenthal & Co., on June 25, 1910. The defendant is a resident of Massachusetts. Lowenthal & Co. are residents of New York, with an office in Detroit. Lowenthal & Co. assigned their cause of action to Adolph Barlow, a resident of Detroit, and he brought this suit, and at the same time garnished Lowenthal & Co., his assignors, who were owing defendant $1,000 for drills. Substituted service was made in pursuance of the statute on the defendant in Massachusetts, and it subsequently appeared by attorney and pleaded the general issue.

The trial resulted in a verdict for the plaintiff, and defendant has assigned several errors thereon.

1. Error is assigned on the refusal of the court to dismiss the proceeding. During the progress of the trial, defendant moved the court to dismiss the suit on the ground that it appeared that the assignment was made to the plaintiff to enable him to garnishee the assignors; that the assignee was merely a nominal plaintiff; that, as garnishee proceedings in Michigan are adversary proceedings, Lowenthal & Co. could not be both plaintiff and defendant; that to make such use of the writ of garnishment was an abuse of process for which this suit should be dismissed.

There seems to be no question but that Lowenthal & Co. had a cause of action against the defendant. If they did, they had a lawful right to assign it (3 Comp. Laws, § 10054, 4 How. Stat. [2d Ed.] § 12704), and, after the assignment was made, the plaintiff was the legal owner thereof. When he became the legal owner, he could bring suit thereon, and garnishee Lowenthal & Co. or any one else within the jurisdiction of the court whom he suspected of being indebted to the defendant. 3 Comp. Laws, § 10600 *et seq.* (5 How. Stat. [2d Ed.] § 13436). It does not appear that any step was taken which was not authorized by the law, and, if such is the case; abuse of process could not result therefrom. See *Leeman* v. *McGrath,* 116 Wis. 49 (92 N. W. 425). Neither the defendant nor his property was inveigled into this State by artifice or fraud, as was the case in *Copas* v. *Provision Co.,* 73 Mich. 541 (41 N. W. 690), nor was process taken out for one purpose and used for another which was unlawful, as was done in *Antcliff* v. *June,* 81 Mich. 477 (45 N. W. 1019, 10 L. R. A. 621, 21 Am. St. Rep. 533). As to the claim that garnishment proceedings are adversary in this State, it is perhaps true after

they reach a certain stage. If the garnishee plaintiff is content with the answer of the garnishee defendant, the proceedings are not adversary. If he is not content with the answer, the statute then puts it in his power to make an adversary proceeding of it, but it is not an adversary proceeding until it reaches that stage. We think the trial court properly denied the motion.

2. A variance between the declaration and proofs is claimed. The declaration counts upon the promise of defendant to accept the steel within a reasonable time, whereas the proofs, as evidenced by the contract, show that the defendant's promise was to "do everything possible to take it up within a reasonable time," and counsel observes that there is a marked difference between a promise to do a thing within a reasonable time, and a promise to do everything possible to do it within a reasonable time. This distinction has more force when first stated than it has when we consider that, if the defendant did everything possible to accept the steel within a reasonable time, the same reasons which prevented the acceptance would operate to show that a reasonable time had not expired, as the question of reasonable time must be determined in either event from all the circumstances attending the contract. But, whatever force this objection may have, it is rendered rather unimportant by the fact that the defendant claims it refused to accept any more of the steel because of its inferior quality before this suit was instituted.

3. It is argued that there was no evidence at the time the suit was commenced that the time had arrived when, under the contract, Lowenthal & Co. could rightfully require defendant to take any portion of the 25 tons of steel, and that therefore the action of the trial court in submitting that question to the jury was error. The material portions of the contract bearing on this question are:

"We expect to use at least twenty-five tons of this steel, but owing to the large quantity of high-speed steel that we now have on hand, and contracts that are in force, it is impossible for us at this date to limit the time that we will take the above twenty-five tons, although we will do everything possible to take it up within a reasonable time. It is understood that you are to carry the inclosed sizes in stock for us, and we are to order from time to time such quantities as we may need. Regarding quality. We are to be the sole judge of the quality, and if we find that the quality is not equal to steel we are now using, it will be our privilege to cancel any arrangements that have been made."

The proofs show that the contract was closed on June 25, 1910. This suit was not begun until February 20, 1912. Only a small amount of the steel was ordered during that period, notwithstanding the correspondence shows that defendant promised repeatedly that orders for the same would be forthcoming. Finally, defendant refused to order any more of it, assigning as a reason upon the trial that the steel did not stand the test. Testimony was introduced showing the capacity and output of defendant's mill, and the volume of business it was doing, and these were such that a jury might infer therefrom that the entire amount of steel contracted for could have been made use of within the time which elapsed. At least one reason why the steel was not ordered appears to be disclosed by a letter written by defendant to Lowenthal & Co. January 17, 1912, in which, among other things, it is said:

"Now, how is it possible, looking at the matter from our point of view, for us to continue to buy steel from you, when you have, up to the present time, refused to pay for the drills you have had from us? If this was settled, there is no doubt but what we could continue to do business together pleasantly. You certainly cannot feel that you are encouraging us to place orders for steel."

These items of proof, taken in connection with the other testimony in the case, were sufficient to justify the trial court in submitting to the jury the question of "reasonable time," and also the question of "good faith" in passing upon the quality of the steel. But counsel again argues that a contract to perform within a reasonable time differs from one agreeing to "do everything possible to perform within a reasonable time." The trial court appears to have recognized the particular elements which the contract made necessary in determining that question. The jury were instructed, in part, that:

"What was a reasonable time would depend largely upon the situation of the parties, the quantity of steel they had on hand, what they had contracted for, the capacity of the defendant's factory to use up steel in the manufacture of drills, and any other facts or circumstances that the parties had in mind at the time of the making of this contract for the purpose of determining what was a reasonable time."

The defendant stipulated that it would do everything possible to perform within a reasonable time. Whether it did so was a question to be determined by the jury under all the circumstances, and especially with reference to the conditions mentioned in the contract having a direct bearing thereon. These things were specifically called to their attention in the foregoing instruction. The parties surely intended that the defendant should order the steel within some period, and they stipulated that an effort should be made to do it within a reasonable time. Whether the defendant did so was without doubt a question of fact.

But, as we have heretofore indicated, we are unable to appreciate the importance of the question as to whether the time for ordering the steel had expired, inasmuch as defendant itself made proof that it refused to accept any more of the steel, because it

was below the contract grade. If defendant had concluded to accept no more of the steel, further compliance with the contract on its part was at an end, and whether the words "reasonable time" meant 18 months or 28 months would be a matter of no importance.

4. The verdict was not so decidedly against the weight of the evidence as to call for a reversal.

The other assignments of error have been considered, but we find no reversible error in them.

The judgment of the trial court is affirmed.

Brooke, C. J., and McAlvay, Kuhn, Stone, Ostrander, Moore, and Steere, JJ., concurred.