CHARLES R. BRAND AND GILBERT McCULLOUGH v. THEODORE H. HINCHMAN ET AL.

*Malicious prosecution of attachment suit—Necessity of actual seizure of property to sustain action—Constructive service of writ—Settlement of debt—Probable cause— Evidence—Malice—Damages.*

1. An action for malicious prosecution will lie without any arrest or seizure of property.

2. The settlement of the debt by a defendant in an attachment suit, and the payment of the costs of the proceedings, is *not* a bar to an action for malicious prosecution if the attachment was malicious and without probable cause.

3. The action of an officer in going to the store of a defendant in an attachment suit, and showing him the writ, and remaining in the store for the purpose of preventing any goods being taken therefrom, must be regarded as a constructive service of the writ or taking possession of the goods.

4. The want of probable cause for suing out a writ of attachment in itself raises a presumption of malice under the law.

5. If the plaintiff *honestly* believes that there is probable cause for suing out a writ of attachment, the mere fact of its *non-existence* will not render him liable for malicious prosecution ; and it is for the jury to determine if he entertained such belief, which fact they must determine by ascertaining what careful and prudent business men would have done under like circumstances.

6. In a suit for malicious prosecution in suing out a writ of attachment, evidence of the publication in a newspaper of a notice of such attachment, and of the circulation of the paper, is admissible as tending to show the publicity given to the act complained of ; and the plaintiff may also show that his business reputation was good before the issuance of the writ.

Error to Wayne. (Jennison, J.) Argued January 13, 1888. Decided March 2, 1888.

Case for malicious prosecution of an attachment suit.

Defendants bring error. Affirmed. The facts are stated in the opinion.

*Griffin, Warner, Hunt & Berry*, for appellants.
*Henry M. Duffield*, for plaintiffs.

Morse, J. Plaintiffs sued defendants for a malicious prosecution of an attachment suit, and recovered verdict and judgment for $625, in the circuit court for the county of Wayne.

On the fourth day of August, 1885, John M. Hinchman, one of the defendants, and in their behalf, made affidavit and obtained a writ of attachment in the superior court for the city of Detroit against the plaintiffs. The affidavit alleged that the plaintiffs were indebted to the Hinchmans in the sum of $473.11 over and above all legal set-offs, and that the same was due upon express contract; also, that the said plaintiffs, as the deponent in the affidavit had good reason to believe, were about to assign their property or dispose of it with intent to defraud their creditors, and were about to conceal their property, or some part thereof, with intent to defraud their creditors.

The writ was left at the sheriff's office, and put in the hands of a deputy for service. This deputy, with another officer, proceeded to the store of the plaintiffs between the hours of two and three o'clock in the afternoon of the day the writ issued. He saw one of the plaintiffs, Mr. Brand, sitting at the desk, and informed him that he had a writ of attachment in favor of Hinchman & Sons, the defendants in this action, and against plaintiffs. He exhibited the writ to Brand. Brand said the matter was settled, and asked time to see Hinchman & Sons, or their attorneys, which was granted. The officer swears that he told Brand he would stay in the store until he returned, and would make no levy. He testifies further that he made no levy, and did not take

possession of the store or any of the goods therein. He claims that he remained in the store not more than half an hour, when Mr. Berry, a clerk in Hinchman & Sons' attorneys' office, came and told him to go out, as the matter was arranged. He claims he did not serve the writ.

The writ was returned by the sheriff August 13, 1885, with the following indorsement by the attorneys for Hinchman & Sons:

" To the clerk. Please enter an order discontinuing this case."

The return was as follows:

" By direction of the plaintiffs' attorneys, I hereby return the within writ without service, the case having been discontinued.         GEORGE H. STELLWAGEN.
"By H. H. Trainor, Deputy-Sheriff."

On the tenth day of August, 1885, the plaintiffs in this suit paid the debt to Hinchman & Sons, and seven dollars as costs of suit. Mr. Brand testifies that the officer showed him the writ, and said he had an attachment against his goods. Brand left the officers in the store when he went to see Hinchman & Sons. They were gone when he returned. Mr. McCullough swears that he came to the store soon after Mr. Brand went out. The officers were in the store when he arrived, and remained there about half an hour after he came. The officers said nothing to him about the attachment, but he suspected it.

It appears clearly enough from all the evidence that no formal levy or service of the attachment was made, and no manual possession or disturbance made of the goods; yet the officers virtually had a possession of the store while they stayed there, and one of them testified that, had any one attempted to remove any of the goods out of the store, he should have interfered and prevented it.

Some evidence was introduced as tending to show damages, as follows:

Plaintiffs had been, before this, doing business with J. C. Wemple & Co., of New York, purchasing goods of them on credit. August 12, 1885, they gave an order to this firm, through an agent, for a bill of goods, amounting to $136, informing him of the attachment proceedings. About a week thereafter they received a letter from Wemple & Co., stating that if plaintiffs would pay cash for the goods they would send them, and give a discount of 3 or 4 per cent. The plaintiffs then countermanded the order.

A truckman brought a barrel of glue to the store. He wanted the money for it. No one but a clerk of plaintiffs was at the store. He did not know whether the bill for the glue was correct or not, and would not pay it, and the truckman took the glue away.

It was also shown, under objection, that the following paragraph was published in the Detroit Free Press of August 5, 1885:

"In the superior court, yesterday, T. H. Hinchman & Sons swore out an attachment against Charles R. Brand and Gilbert McCullough."

Mr. Brand testified that one Anderson, an architect, told him that he had wished him to figure on a job of Edward Kanter, but thought there was no use, as the architect had heard there was an attachment upon their property, and plaintiffs closed up. When he found out they were all right it was too late, as the bids had been received, and the job let at $1,100. Brand was permitted to testify, against objection, that the profits upon the job at $1,100 would ordinarily be from 10 to 20 per cent. "It might be more; it might be less."

The plaintiffs also introduced evidence tending to show that they were solvent and able to pay their debts at the time of the attachment, and had not assigned, disposed of, or concealed any of their property with intent to defraud their creditors, and had no intention of so doing.

Defendants' counsel, when plaintiffs rested, moved to strike out the testimony in relation to the Wemple transaction and the barrel of glue; also the testimony of A. H. Dey, president of the American Exchange National Bank, who had testified that the plaintiffs were depositors and borrowers at his bank for a number of years, and that he knew nothing against their reputation for honesty and integrity in the community. The defendants' motion was denied as to all this testimony, and exception taken.

The defendants made no showing as to any facts upon which they based their affidavit for the attachment writ except that the plaintiffs refused to give Mr. Berry, a clerk in the office of Griffin & Warner, who had the bill of Hinchman & Sons for collection, any statement of their assets and liabilities, and did not meet some of their promises to pay the debt.

John M. Hinchman, who made the affidavit, testified that he, at the time of making it, fully believed that he had good reason to believe as therein stated. He also testified that Brand said, in excuse for non-payment of the bill, that McCullough was frequenting saloons in business hours, and did not attend to business, leaving the whole burden upon him, and Hinchman also thought that he had seen McCullough under the influence of liquor, which influenced his judgment about the matter. On cross-examination he stated that the refusal of Brand & McCullough to give their assets and liabilities to Berry cut no figure, and had no bearing upon his intention or mind when he made the affidavit, and that he had heard nothing of any disposition of property by plaintiffs at that time, and could not remember that he had heard of any concealment of their property with intent to defraud creditors. He was afraid of a chattel mortgage that might be made upon the stock to shut off creditors, but did not remember of hearing any one say that plaintiffs were about to make such a mortgage.

The first objection made by defendants' counsel against this judgment is that no action for malicious prosecution will lie unless there has been an arrest of the person or a seizure of the property.

The declaration in the case in the first count substantially charged a malicious suing out of the writ without probable or reasonable cause, a seizure of the goods in the plaintiffs' store under said writ, and a possession of the same taken and held for a half day, disturbing and injuring the business of plaintiffs; and that the defendants withdrew the sheriff from the store upon the promise of the plaintiffs, under compulsion of said levy and attachment, to pay the claim of Hinchman & Sons on a certain day, which payment was duly made by plaintiffs; that the attachment was known to many of the customers of plaintiffs in Detroit and elsewhere, and to the public generally, and to merchants in the cities of Detroit, Boston, New York, Philadelphia, and elsewhere, with whom the plaintiffs had dealings; and that plaintiffs were thereby greatly injured in their credit and reputation, and put to great expense in obtaining a dissolution of said writ of attachment.

The second count reads as follows:

"And whereas, also, the said defendants, further contriving and maliciously and wickedly intending as aforesaid, heretofore, to wit, at the time and place and in the manner aforesaid, did falsely, and maliciously, and without reasonable or probable cause, sue out and prosecute, and cause to be sued out and prosecuted, the writ of attachment as aforesaid, commanding the sheriff, etc., as aforesaid, and the said sheriff attached certain property of said plaintiffs in the county of Wayne as aforesaid, pursuing the directions of said defendants and their agents, belonging to said plaintiffs, which said property was of great value, to wit, $10,000; the said defendants wickedly and maliciously intending by said large, excessive, and unnecessary seizure and attachment of said property as aforesaid to injure and annoy said plaintiffs.

"And the said plaintiffs say that, by reason of the premises,

they were greatly injured in their credit and reputation, and put to great inconvenience and expense, at, to wit, Detroit aforesaid, and elsewhere, to the damage of the plaintiffs $10,000.''

While in this case there was no service of the writ, there was at least a technical taking and possession of the property. The officer went in the store to make the levy, and did not go out of it until ordered to by the agent of Hinchman & Sons. He testifies that he should have prevented any one from removing any goods from the building, and he certainly had possession enough to have done so.

But, whether he had such possession or not, I am fully satisfied, from a consultation of the authorities, that the action is maintainable without any arrest or seizure of property.

There are but few, if any, wrongs for which the law does not provide a remedy, and if a man is hurt or damaged in his property, business, credit, or reputation, by the malicious commencement or prosecution of a civil suit, without probable cause, the better doctrine is that he can maintain an action on the case for such hurt or damage.

Some of the authorities presented by the counsel for defendants upon the argument support his position, notably the following: *McNamee v. Minke,* 49 Md. 133; *Mayer v. Walter,* 64 Penn. St. 283; *Wetmore v. Mellinger,* 64 Iowa, 741 (18 N. W. Rep. 870); *Potts v. Imlay,* 4 N. J. Law, 330; *Bitz v. Meyer,* 40 Id. 252.

The majority of text writers also sustain the proposition of defendants' counsel, as do also the English authorities. The principle is grounded, in most of these cases, and by the text writers, upon the idea that in a malicious civil suit, where no property is seized, and the person is not molested, the recovery of his costs is a sufficient recompense to the injured party. Where a civil action is wrongfully brought, the costs which the party gets are a compensation for the

wrong; but in a criminal proceeding there are no costs. Townsh. Sland. & Lib. § 419; 2 Add. Torts, § 863.

While it may perhaps be said that the weight of authority denies the action in such cases, the weight of reason certainly approves it. And latterly the American authorities are tending strongly and increasing rapidly in favor of the maintenance of the suit.

The matter of costs I do not consider a sufficient reason for denying remedy, as the costs, under our practice, awarded the prevailing party, are never sufficient to re-imburse him for the actual cash expenses of the litigation, to say nothing of the loss of time and the inconvenience and trouble suffered. Even some of the cases cited by ·defendants' counsel hold, in language at least, that, without an arrest of the party or a seizure of his goods, if any special injury is sustained by him, an action might lie to recover his damages for such injury. See *Wetmore v. Mellinger,* 64 Iowa, 741, 744 (18 N. W. Rep. 870); *Bitz v. Meyer,* 40 N. J. Law, 252.

A large number of cases hold that it is not necessary that there should be an arrest or a seizure of property, but that the malicious prosecution of a civil suit, and epecially the swearing out of a false attachment without probable cause, is actionable. *Tomlinson v. Warner,* 9 Ohio, 104; *Fortman v. Rottier,* 8 Ohio St. 548; *Marbourg v. Smith,* 11 Kan. 554; *Whipple v. Fuller,* 11 Conn. 581; *Closson v. Staples,* 42 Vt. 209; *Pangburn v. Bull,* 1 Wend. 345; *McCardle v. McGinley,* 86 Ind. 538; *Lockenour v. Sides,* 57 Id. 360; *Burnap v. Albert,* Taney, 244; *Cox v. Taylor's Adm'r,* 10 B. Mon. 17; *Eastin v. Bank,* 66 Cal. 123 (4 Pac. Rep. 1106); *Burton v. Railway Co.,* 33 Minn. 189 (22 N. W. Rep. 300); *Parmer v. Keith,* 16 Neb. 91 (20 N. W. Rep. 103); *Woods v. Finnell,* 13 Bush, 629.

The reason for the rule laid down by these last-mentioned authorities seems to me to be satisfactory and in accordance with right and justice. The common law declares that for

every injury there is a remedy.   Especially is this so where the injury is malicious.   If a man is injured in his credit and reputation, and his business lessened or broken up, it can make no difference, in his right to recover for such injury, that his person or property has not been manually seized or disturbed.   But this is my individual opinion, the other members of the Court not deeming it necessary in this case to express any opinion upon this matter.

It is also urged against the right of plaintiffs to maintain their action that the pleadings and proofs both show that the attachment suit was not determined in favor of the defendants in that cause, the plaintiffs in this suit, and that an adjustment, compromise, settlement, or payment of a claim, with full knowledge of the facts, and of the methods of procedure which have been adopted for the purpose of enforcing it or collecting it, is a bar to an action of malicious prosecution.

This objection is not tenable.   When the action complained of is the beginning or prosecution of a criminal suit or proceeding it is properly held, by all the authorities, that the determination of such suit or proceeding must be such as does not admit a reasonable cause for the prosecution.   There must be an acquittal, or such proceedings as determine the case in the favor of the accused person without any settlement by him of the criminal charges, or any connivance on his part to secure his discharge.   This is also the general rule where a groundless and malicious civil suit constitutes the cause of action.   Were the rule otherwise, the defendant in the action complained of might recover in an action for malicious prosecution, and yet be convicted, or have a judgment rendered against him, in the former suit.

But, as is well said in the case of *Fortman v. Rottier,* 8 Ohio St. 550, the reason of the rule does not apply in the case of the suing out of a false and malicious attachment. The plaintiffs—

" Do not bring their action to recover for a malicious prosecution, strictly speaking, nor for the malicious and groundless instituting and prosecuting of a civil suit. They admit that they were indebted to Fortman [in this case Hinchman & Sons]; but they complain that, for purposes of more oppression, he [they] wantonly, maliciously, and without probable cause, by his own false affidavit, of an *ex parte* character, procured an attachment to be issued, under the statute, as auxiliary to his suit. That such a wrong will constitute a valid cause of action would seem reasonable. * * * Now, if the affidavit was false, * * * and if Fortman had no good reason to believe it true, there would be a clear absence of probable cause. But the subsequent proceedings in the cause would not, necessarily, involve an inquiry into the truth or falsity of this part of the affidavit [alleging acts done or about to be done with intent to defraud creditors]; nor would the final judgment at all determine this question. The existence of the debt,—which is all that the judgment ascertains,—does not, of itself, constitute probable cause for the attachment. The general principle seems to be that, when the termination of the former suit can neither tend to establish nor invalidate the plaintiff's cause of action, it is not necessary to aver such termination."

Nor is it necessary that the attachment must have been discharged or otherwise terminated in favor of the plaintiffs in the suit for malicious prosecution. The settlement of the debt by the plaintiffs, and the payment of the costs of the proceedings, upon the principles and for the reasons above stated, cannot prevent the maintenance of this action if the attachment was malicious and without probable cause. *Fortman v. Rottier*, 8 Ohio St. 551, 552; *Marbourg v. Smith*, 11 Kan. 554; *Bump v. Betts*, 19 Wend. 419; *Kinsey v. Wallace*, 36 Cal. 462; *Spaulding v. Wallett*, 10 La. Ann. 105; *Wall v. Toomey*, 52 Conn. 35, 38; *Morton v. Young*, 55 Me. 24.

It is claimed that the court erred in instructing the jury that there was a sufficient service of the writ to maintain a charge of abuse of process; that there was a sufficient service of the writ to maintain the action, and support the declaration, by the officers going into the store and maintaining pos-

session, or rather remaining there, until they were ordered away by the defendants. As previously stated, there was no error in this instruction. The act of the officers in going to the store with the writ, showing it to one of the plaintiffs, and remaining there for the purpose of preventing any goods going out of the store, must be regarded as a constructive · service of the writ or taking possession of the goods.

The court also charged the jury that, as a matter of law, the attachment suit had come to a termination in favor of the plaintiffs. Although it cannot be considered that such suit had been terminated in favor of the plaintiffs (the defendants in that suit), yet, as heretofore shown, it was not necessary that the suit should have so terminated. Under the facts of the settlement, as shown by the evidence, the plaintiffs were entitled, under the authorities, to maintain this suit; such settlement being no bar to this action. Therefore no error was committed.

The instruction of the court as to probable cause is also complained of, but we cannot discern any fault in it, at least as against the defendants. The jury were informed, in substance, that probable cause would be such cause as the generality of business men of care and prudence would act upon under like circumstances; that the fact that the plaintiffs neglected to pay the debt, or were careless in the conduct of their business, would not be sufficient to justify the belief that they were about to dispose of or conceal their property with intent to defraud their creditors; that the probable cause to believe this must have been founded on competent evidence; and that, unless they found that the defendants did have probable cause to believe that the plaintiffs intended to do what the affidavit charged, then there was no probable cause for suing out the writ; and that, if they did not find the existence of such probable cause, they must also find, in addition, that the defendants acted from malicious motives in taking out the attachment; that it was not neces-

sary that there should have been any ill will or a purpose on the part of the defendants to injure the plaintiffs without cause; that if the prosecution was willful, wanton, or reckless, or against the prosecutors' sense of right or duty, or for ends which they knew, or were bound to know, were wrong, this would be malice within the meaning of the law.

This was as favorable to the defendants as they had the right to expect. The want of probable cause in itself raises a presumption of malice under the law.

There is no doubt that, if the defendants honestly believed that they had probable cause, the mere fact that there was not in reality any probable cause would not render them liable. But it was for the jury to determine whether they honestly believed that they had probable cause, and they could only determine this by ascertaining what careful and prudent business men would have done under like circumstances.

The jury were plainly enough notified and instructed that they must find that defendants did not have probable cause to believe the facts stated in the affidavit; and not only this, but they were further told that they must further find malice in addition to this want of probable cause. No one but the plaintiffs had a right to complain of these instructions.

The remaining objections are to the admission of certain testimony, and the refusal to strike out the evidence as to the barrel of glue, and the Wemple transaction, and the testimony of A. H. Dey.

The evidence in relation to the notice of the attachment suit being published in the Detroit Free Press, and the circulation of that paper, was admissible. It had a tendency to show the spreading at home and abroad of the fact that an attachment had been issued against the plaintiffs, which fact of itself is necessarily fraught with injury to the business of the persons so proceeded against. The publication of this item naturally injured the good name and credit of plaintiffs

as business men, which would detrimentally affect their business.

It was proper to show by Dey and others that their business reputation was good before the issuing of this attachment, and it was for the jury to say whether the Wemple matter, and the refusal to deliver the "barrel of glue" without payment before delivery, were the result of the attachment proceedings, or whether the refusal of credit was attributable to other causes.

We find no errors in the admission of testimony or in the charge of the court. The action was maintainable under the declaration, and the proof sufficiently supported the declaration. The case was fairly given to the jury, and their verdict must dispose of the cause.

The judgment is affirmed, with costs.

The other Justices concurred.