LEESEBERG v. BUILDERS PLUMBING SUPPLY COMPANY.

1. MALICIOUS PROSECUTION — ATTACHMENT — UNDISPUTED FACTS — PROBABLE CAUSE.

   The want of probable cause is a question of law to be determined by the court in an action for malicious prosecution of writ of attachment when the facts are undisputed.

2. SAME—PROBABLE CAUSE—DISPUTED FACTS—QUESTION FOR JURY.

   The existence of probable cause for issuing writ of attachment is a jury question in an action for malicious prosecution if the facts surrounding the issuance are in dispute so that the question of probable cause becomes a mixed one of law and fact.

3. SAME—APPEAL AND ERROR—PROBABLE CAUSE—QUESTION FOR JURY —DISPUTED FACTS.

   Submission to the jury of question of probable cause in action for malicious prosecution of writ of attachment for reason that the facts were disputed *held*, proper, on record presented.

4. SAME—PROBABLE CAUSE—HONEST BELIEF—QUESTION OF FACT.

   A defendant who honestly, but mistakenly, believed that there was probable cause for suing out a writ of attachment, would not be liable for malicious prosecution by reason of the non-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3]  34 Am Jur, Malicious Prosecution § 161.
  Probable cause or want thereof, in malicious prosecution action, as question of law for court or of fact for jury.  87 ALR2d 183.
[4]  34 Am Jur, Malicious Prosecution §§ 46, 49, 161.
  Actual belief on part of prosecutor as element of probable cause in action for malicious prosecution.  65 ALR 225.
[5]  34 Am Jur, Malicious Prosecution §§ 48, 49, 71.
[6]  34 Am Jur, Malicious Prosecution § 71.
[7]  5 Am Jur 2d, Appeal and Error §§ 623, 891.
[8]  34 Am Jur, Malicious Prosecution §§ 95, 97, 98, 165.
[9]  34 Am Jur, Malicious Prosecution § 169; 53 Am Jur, Trial §§ 1035, 1037.
[10]  5 Am Jur 2d, Appeal and Error § 545.
[11]  34 Am Jur, Malicious Prosecution §§ 92, 93.

existence of probable cause, and it is for the jury to determine if he entertained such belief, which fact must be determined by ascertaining what careful and prudent businessmen would have done under like circumstances.

5. SAME—PROBABLE CAUSE—ADVICE OF COUNSEL.

Proof that defendant placed all the facts before his counsel, and acted upon his opinion, would establish probable cause for suing out a writ of attachment, as a defense in an action for malicious prosecution.

6. SAME—PROBABLE CAUSE—ADVICE OF COUNSEL—DISCLOSURE.

Defendant's contention in action for malicious prosecution of writ of attachment that probable cause for issuance of a writ of attachment was shown because he acted upon advice of counsel *held*, without merit, where record fails to disclose that defendant made a full and complete disclosure to the attorney before the writ was issued.

7. SAME—INSTRUCTION TO JURY—PROBABLE CAUSE—ADVICE OF COUNSEL—OBJECTION.

Instruction of court that defendant's contention, that probable cause for issuance of writ of attachment in suit for malicious prosecution was shown because defendant had acted upon advice of counsel, was "not a defense under all the facts and circumstances in this case" *held*, not properly before the Court of Appeals, where no timely objection was made (GCR 1963, 516.2).

8. SAME—VERDICT—ATTACHMENT—LOSS OF PROFITS—INSTRUCTION—MEASURE OF DAMAGES.

Defendant's claim that jury verdict for plaintiff including possible award for loss of profits was erroneous because plaintiff's testimony on loss of profits was vague and uncertain *held*, without merit, where the trial court's instructions properly gave the jury the measure of damages for injury to plaintiff's reputation and credit if they found for plaintiff, and gave no instructions regarding loss of profits.

9. APPEAL AND ERROR—MALICIOUS PROSECUTION—VERDICT—WEIGHT OF EVIDENCE—CONJECTURE.

Defendant's contentions in action for malicious prosecution of writ of attachment that the verdict was against the great weight of the evidence and based on sympathy and conjecture *held*, without merit.

10. SAME—MALICIOUS PROSECUTION—MITIGATION OF DAMAGES—OB-
JECTION.

> Defendant's contention in action for malicious prosecution of
> writ of attachment that plaintiff had failed to make any
> effort to mitigate his damages *held*, not properly before the
> Court of Appeals, where issue was not raised in trial court.

11. MALICIOUS PROSECUTION—JUDGMENT—STATUTES—TREBLE DAM-
AGES.

> · Plaintiff's contention on cross-appeal in action for malicious pros-
> ecution of writ of attachment that the judgment in his favor
> should be trebled in accordance with the statute *held*, incorrect,
> as the statute relied upon applies only to criminal arrest and
> attachment of a person and does not apply to attachment of
> personal property (CLS 1961, § 600.1907).

Appeal from Alcona; Miller (Allan C.), J. Sub-
mitted Division 3 June 7, 1966, at Grand Rapids.
(Docket No. 1,545.) Decided March 28, 1967. Leave
to appeal denied by Supreme Court June 20, 1967.
See 379 Mich 768.

Complaint by Everett Leeseberg against Build-
ers Plumbing Supply Company, a Michigan cor-
poration, for damages caused by its alleged mali-
cious use of a writ of attachment. Judgment for
plaintiff. Defendant appeals and plaintiff cross-
appeals. Affirmed.

*Hillman, Baxter & Hammond (Robert N. Ham-
mond,* of counsel), for plaintiff.

*Vander Veen, Freihofer & Cook (Walter B. Frei-
hofer,* of counsel), for defendant.

HOFFIUS, J. Plaintiff acted as a wholesale jobber
for defendant, Builders Plumbing Supply Company,
from 1958 until 1962. Defendant extended credit
to plaintiff on an open account basis, and payments
were made on a fairly regular basis, with the ac-
count ranging from $16,000 to $21,000 during this
period.

Early in 1962 plaintiff went out of the wholesale jobber business and sold directly on a commission basis for the defendant. It was agreed that plaintiff would endeavor to sell his inventory and apply part of the proceeds as well as a part of his commission on the unpaid balance due to defendant. Trouble thereafter developed between the parties; plaintiff claimed that defendant was not making timely deliveries and was stealing his customers.

In June, 1962, this commission-selling arrangement was discontinued. Thereafter defendant sought to collect the balance which was due from the plaintiff.

Plaintiff claimed that defendant had threatened to put him out of business if he continued to do business with a certain Saginaw plumbing and heating supplier.

In July, 1962, the vice-president of defendant corporation visited the plaintiff in an attempt to settle the account. He testified he informed the plaintiff that if the account was not paid, he could get a judgment and would have to satisfy the judgment out of plaintiff's inventory. He further claimed that plaintiff threatened to take his "merchandise out of here before you get here." Plaintiff denied there was ever any conversation about moving inventory or starting a lawsuit. Later, plaintiff's son was in contact with defendant's vice-president who said that he told the son if payment were not made on this account, suit would be started. The vice-president testified that plaintiff's son replied that the merchandise would never be found after judgment was obtained. Plaintiff's son denied making such a statement.

On August 6, 8, and 9, 1962, payments of $300 each were made. During negotiations to collect the account there was discussion between the par-

ties relative to certain credits that plaintiff claimed and defendant refused to allow.

On August 29, 1962, defendant turned plaintiff's account over to a Grand Rapids collection agency. A representative of this agency contacted plaintiff at about midnight of the day when the matter was referred to him. Both the agent and plaintiff made threats, and the agent returned to Grand Rapids after claiming that plaintiff had failed to show up at an agreed meeting.

The matter was then referred to defendant's attorney who started a civil action and obtained a writ of attachment before judgment. The suit was filed September 7, 1962, and the attorney for defendant filed an affidavit which, in part, reads as follows:

"This deponent further says that he believes, and has good reason to believe, that said above named defendant, Everett Leeseberg, d/b/a Manufacturers Distributors, has disposed of some portion of his property with the intent to defraud his creditors, and further, that said defendant, Everett Leeseberg, d/b/a Manufacturers Distributors, is about to dispose of some further portion of his property with the intent to defraud his creditors."

On September 20, 1962, the attachment papers were served, and the officer locked plaintiff's warehouse. Plaintiff consulted his attorney, and on October 3, 1962, an order dissolving the attachment was entered, and the warehouse was opened.

At the time of filing the suit, defendant's books showed plaintiff owed $8,956.97. When the suit was ultimately tried, it resulted in judgment of $4,752.65 in defendant's favor. The difference between the amount claimed and the final judgment represented credits and carrying charges which the court deducted from the amount claimed.

. Plaintiff commenced this suit claiming that defendant maliciously, and without probable cause, obtained the writ of attachment which resulted in the padlocking of the warehouse. The jury returned a general verdict for the plaintiff in the amount of $10,000.

Defendant contends that the court should have determined, as a matter of law, that there was probable cause to take out the writ of attachment. Defendant therefore urges that the trial court erred in submitting this to the jury as a question of fact.

When there is no dispute as to the facts in defendant's knowledge upon which he relied when the writ was issued, the question of probable cause becomes a matter of law for the court to determine. *Gooch* v. *Wachowiak* (1958), 352 Mich 347.

In *Le Clear* v. *Perkins* (1894), 103 Mich 131 (26 LRA 627), the Court said on page 141:

. "Where the facts are undisputed, probable cause is a question of law, to be determined by the court upon the facts of the case. * * * But if the facts are in dispute, so that the question of probable cause becomes a mixed one of law and fact, it must be given to the jury to determine, upon proper instruction from the court."

Also see *Obeginski* v. *James* (1966), 4 Mich App 90.

In this case, it is clear that there was a dispute as to the statements made by the plaintiff and the plaintiff's son regarding their alleged threat to remove the inventory which was subsequently attached.

The court instructed the jury as follows relative to probable cause:

"I talked about an honest belief for probable cause. I should define that possibly before going on farther. If the Builders Plumbing Supply Company honestly believed that it had probable cause

to obtain the writ of attachment, the mere fact that it was mistaken and it later developed that there was no probable cause would not mean that it would be liable to Everett Leeseberg for malicious attachment.

"Whether such defendant, Builders Plumbing Supply, had such an honest belief is to be determined by you from all of the circumstances based upon what you feel a careful and prudent businessman would do under the same or similar circumstances. In other words, you are to determine what were the facts that Builders knew. Then you are going to say: On those facts, were they entitled to sign this affidavit?  *  *  *

"In relating the matter of probable cause to this particular case, the burden is upon the plaintiff, Everett Leeseberg, to show that at the time the affidavit for writ of attachment was made, that is, September 7, 1962, Builders Plumbing Supply Company did not have probable cause to believe the facts stated in this affidavit.

"Probable cause under these circumstances means that, based upon the information before Builders Plumbing Supply, would the ordinary reasonably prudent businessman, under the same or similar circumstances, have reasonable cause to believe either that the then defendant, Everett Leeseberg, had disposed of property with intent to defraud his creditors, or that he in the future would further dispose of property with intent to defraud his creditors?  *  *  *

"In other words, it is for you, ladies and gentlemen of the jury, to decide (1) whether Builders had probable cause to honestly believe the facts stated in the affidavit; and (2) did the defendant act from malicious motives in taking out the attachment?"

The law as to probable cause in this type of case is stated in the leading case of *Brand* v. *Hinchman* (1888), 68 Mich 590 (13 Am St Rep 362). In that

case a writ of attachment was issued and the officer went to the defendant's premises with the writ. It is clear that the officer was in possession of the store for a short time but made no effort to remove the goods or to lock the store. Nevertheless, the jury returned a verdict for the plaintiff.

The Supreme Court determined that the instructions on probable cause were proper. The Court said at page 601:

"There is no doubt that, if the defendants honestly believed that they had probable cause, the mere fact that there was not in reality any probable cause would not render them liable. But it was for the jury to determine whether they honestly believed that they had probable cause, and they could only determine this by ascertaining what careful and prudent businessmen would have done under like circumstances.

"The jury were plainly enough notified and instructed that they must find that defendants did not have probable cause to believe the facts stated in the affidavit; and not only this, but they were further told that they must further find malice in addition to this want of probable cause. No one but the plaintiffs had a right to complain of these instructions."

It is clear that the trial court properly instructed the jury in accordance with the rule set down in *Brand* v. *Hinchman, supra.* Since there was a dispute of fact, the question had to be submitted to the jury. The trial court would have been in error in determining the question as a matter of law and refusing to submit it to the jury.

Mention is made in defendant's brief that it relied upon the advice of counsel in starting suit by attachment. The rule is well settled that "in an action for malicious prosecution proof that defendant placed all the facts before his counsel, and acted

upon his opinion, established probable cause."
*Wiesinger* v. *First National Bank* (1895), 106 Mich
291, p 294.   See also *Le Clear* v. *Perkins, supra;*
*Pawlowski* v. *Jenks* (1897), 115 Mich 275; *Kompass*
v. *Light* (1899) 122 Mich 86; *Fisk* v. *Powell* (1957),
349 Mich 604.

An examination of the transcript fails to disclose
that the defendant made a full and complete dis-
closure to the attorney before the writ of attach-
ment was issued.   The court, therefore, instructed
the jury that this was "not a defense under all the
facts and circumstances in this case."

Defendant did not object to this instruction and
therefore has not properly preserved this assign-
ment of error as required by GCR 1963, 516.2.

The defendant further contends that "plaintiff's
testimony on loss of profits was so uncertain and
vague that a verdict including such was erroneous."
It should be noted that any evidence relative to
alleged loss of profits was brought into the case
by defendant's cross-examination of the plaintiff
and not by the plaintiff's direct examination.   Plain-
tiff admitted that he could give no estimate regard-
ing his alleged loss of profits.   Defendant, however,
introduced plaintiff's sales tax records and income
tax returns.   The income tax returns indicated a
net loss from the operation of this business for the
years 1960 through 1963.

The trial court did not give any instructions on
loss of profits.   The court's specific instructions are
set forth below and cannot be complained of:

"I instruct you that if you find that the plaintiff
Everett Leeseberg is entitled to recover damages,
that he is entitled to recover full compensation for
all losses sustained, including expenses incurred in
and about the lawsuit which Builders Plumbing
Supply Company commenced against him and any
injury to or destruction of his business or his

credit. That is, if you find that Everett Leeseberg is entitled to recover, then you will award him damages sufficient to make him whole for all the injurious consequences which, according to the usual course of events and the general experience which you find, reasonably resulted from the conduct of the defendant in procuring or wrongfully issuing the writ of attachment.

"You are not to merely speculate on damages, although damages are never required to be proved with more certainty than the nature of the damage justifies. An injury to reputation or credit is never capable of proof in any specific dollar amounts. If you find that the plaintiff Everett Leeseberg is entitled to recover, you will determine whether or not he has been injured in his reputation and credit. If you find he has been injured in his reputation and credit, you will assess damages which will fairly compensate him for such injury to his credit and reputation according to your best judgment, despite the fact that this is a difficult thing to do.

"Also there has been claim of humiliation and shame. If you find that these things did occur, and were proximately related to the cause of action, then you are to fully and fairly compensate him for such things. However, you are not to consider shame or embarrassment of Mrs. Leeseberg if this did occur, or of other members of the family, because they are not plaintiffs in this case. That is to be disregarded by you. It is not a case of punishment. You are not to consider punishment of the defendant as a basis for awarding damages."

These instructions properly gave to the jury the measure of damages if they found for the plaintiff. Since the court gave no instructions regarding loss of profits, it would be unfair for us to speculate that the jury considered this alleged element of damage.

Defendant also contends that the verdict was against the great weight of the evidence and based

on sympathy and conjecture. These claims are without merit.

Defendant's contention that plaintiff failed to make any effort to mitigate his damages is not properly before this court. The issue was not raised in the trial court.

Plaintiff urges on cross appeal the fact that CLS 1961, § 600.2907 (Stat Ann 1962 Rev § 27A.2907) requires the trebling of damages. The trial judge denied plaintiff's motion to treble damages pursuant to this section which reads as follows:

"Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, . shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the county jail for a term not exceeding 6 months."

Although this statute has been in effect in substantially this language for more than 100 years, no Michigan case interpreting it has been found. It should be pointed out that the statute reads:

"Every person who shall  *  *  *  cause or procure any other to be arrested, attached or in any way proceeded against  *  *  *  shall be liable."

This court is of opinion that where the statute refers to "any other," it is referring to any other

"person" and not "thing." The above section of the statute therefore applies only to criminal arrest and attachment of a person and does not apply to attachment of personal property as here involved.

Counsel for defendant contends the inclusion of the qualifying language, "without the consent of such person, or where there is no such person known" means that the statute is applicable only if a suit or prosecution is commenced in the name of a fictitious person or the name of a person who has not consented to such action. Although defendant started the attachment suit in its own name, our decision based upon the above interpretation of this statute eliminates the necessity of considering this argument. The trial court was correct in denying plaintiff's motion to treble damages.

Judgment affirmed. Costs to plaintiff-appellee.

HOLBROOK, P. J., and BURNS, J., concurred.