**SAGE INTERNATIONAL, LTD., a Michigan corporation, Plaintiff,**

v.

**CADILLAC GAGE COMPANY, a Michigan corporation, Defendant;**

**and consolidated actions.**

**Civ. A. Nos. 78–70064, 79–74829, 80–70493 and 80–71074.**

United States District Court,
E.D. Michigan, S.D.

Nov. 19, 1982.

Barry Reed, James Safley, Minneapolis, Minn., Jerome Gropman, G. Reynolds Sims, Dennis Peppler, Gropman, Kaplan, Sims & Gibbons, P.C., Southfield, Mich., for plaintiff.

Roger Wardle, Cynthia Cooper Adkison of Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark, Farmington Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS MALICIOUS PROSECUTION AND ABUSE OF PROCESS CLAIMS OF PLAINTIFFS THEODORE HENKE, INTERNATIONAL LOGISTICS GROUP, LTD., ROBERT D. CLOSS, RICHARD NUTTING, GERALD ROSS, AND CHARLES STRONG

PATRICIA J. BOYLE, District Judge.

This matter is before the court on defendant's Motion to Dismiss Malicious Prosecu-tion and Abuse of Process Claims of the plaintiffs in the "Henke Group" which include plaintiffs Theodore Henke, International Logistics Group, Ltd., Robert D. Closs, Richard Nutting, Gerald Ross, and Charles Strong.[1]

Defendant brings the instant motion under Fed.R.Civ.P. 12(c) which provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under rule 12(c) where the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure [hereinafter Wright & Miller] § 1368, p. 690. For purposes of this motion, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478 (6th Cir.1973); 2A Moore's Federal Practice, § 12.15 (2d ed. 1982). In contrast to a rule 12(b) motion in which a claim may be dismissed for failure to satisfy one of the procedural prerequisites, a rule 12(c) motion for judgment on the pleadings, theoretically, is directed toward a determination of the substantive merits of the controversy, and consequently, such a motion should only be granted where it is clear that the merits of the controversy can be fairly and fully decided in this summary manner. 5 Wright & Miller, § 1369, p. 698.

The rule itself provides for a conversion procedure whereby the motion for judgment on the pleadings may be deemed a rule 56 summary judgment motion where

---

1. The memorandum opinion embodies a decision rendered from the bench on October 14, 1982.

matters outside the pleadings are presented to and not excluded by the court; however, it is within the court's discretion whether to accept extraneous matter on a 12(c) motion and treat it as one for summary judgment. See, e.g., *A.S. Abell Company v. Baltimore Typographical Union No. 12,* 338 F.2d 190 (4th Cir.1964); 5 Wright & Miller, § 1371, p. 705. In the instant situation, I decline to consider matters outside the pleadings, given my conclusion that the issue is one of law which can be resolved on the pleadings, and consequently, the standards governing rule 12(c) are applicable. Although the granting of a 12(c) motion is rare, it is appropriate in this instance.

Professors Wright and Miller note that the pleading burden imposed upon a plaintiff in a malicious prosecution case is somewhat higher than it is in the typical civil action, a fact they attribute to the traditional judicial disfavor of this tort. 5 Wright & Miller, § 1246, p. 224.

■ Plaintiff's state law claims of malicious prosecution and abuse of process are before the court on the basis of pendent jurisdiction, and consequently, this court is bound to decide this state law issue as it would have been decided had the case been brought in the Michigan state court system. 19 Wright, Miller & Cooper, § 4507, p. 85.

■ Most jurisdictions allow a common law action for malicious prosecution (also labelled as "wrongful use or initiation of civil proceedings") where it appears from the complaint that the alleged prosecution has terminated in plaintiff's favor, that the defendant had no probable cause, and that he acted from malicious motives. 15 Michigan Law & Practice, *Malicious Prosecution,* § 1, p. 573 (1982); W. Prosser, Torts § 120 (4th ed. 1971); Restatement (Second) of Torts, § 674 (1977). Annot. 84 A.L.R.2d 555 (1978). The Michigan Supreme Court has recently affirmed its allegiance to the "English Rule" recognizing a fourth prerequisite for a common law claim of malicious prosecution—that of "special injury".

*Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585 (1981).[2] Without specifically defining the term, the court concluded, upon an exhaustive review of prior case law, that an action for malicious prosecution will lie only upon a showing of "special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings." *Id.* at 40–41, 312 N.W.2d 585, citing, e.g. *Brand v. Hinchman,* 68 Mich. 590, 36 N.W. 664 (1888) (a "technical seizure" of property in which writ of attachment was ordered by court, but not levied, and deputies remained in store for half hour); *Leeseberg v. Builders Plumbing Supply Co.,* 6 Mich.App. 321, 149 N.W.2d 263, *leave denied,* 379 Mich. 768 (1967) (writ of attachment caused plaintiff's warehouse to be locked for two weeks); *Rowbotham v. Detroit Automobile Inter-Insurance Exchange,* 69 Mich.App. 142, 147, 244 N.W.2d 389 (1976) (defendant filed an improper certificate of unsatisfied judgment with the state motor vehicle department, causing an unjustified suspension of Rowbotham's driver's license); *Krzyszke v. Kamin,* 163 Mich. 290, 128 N.W. 190 (1910) (injunction restrained plaintiff from disposing of his personal property at auction on strength of judgment creditor's bill containing patently insufficient averments).

In rejecting the American rule, under which no special injury is required, the court criticized the views of Dean W. Prosser and that school of thought which sees "the preferred remedy for a wrongful tort action as another tort action." *Friedman,* 412 Mich. at 42, 312 N.W.2d 585. The court reasoned that where a broadly defined action for malicious prosecution is recognized meritorious as well as frivolous claims are likely to be deterred and free access to the courts is inevitably chilled. *Id.* at 46, 312 N.W.2d 585. To elaborate briefly on Justice Levin's policy discussion in *Friedman,* I note also that the assumptions underlying the "English Rule" are that one full hearing will promptly and fully resolve the differ-

**2.** This decision postdates this court's ruling on the sham litigation motion, entered February 23, 1981.

ences between the parties and that the prevailing party may recover the costs of defending a frivolous action. *Id.* at 32, n. 20, 312 N.W.2d 585. This court recognizes the flaws in these assumptions in the context of present day litigation: parties are not routinely compensated with costs and attorneys fees absent some statutory basis for such an award, overcrowding of dockets precludes a speedy resolution of even wholly meritless actions, and summary resolution of insubstantial claims by trial courts is infrequent. While I recognize that these factors may require the faultless defendant to litigate for an inordinate amount of time with consequent expense, recognition of these problems supports, rather than detracts from the state court's conclusion that an unrestrained cause of action for malicious prosecution is not the solution. Such a policy would serve not only to chill the meritorious lawsuit but also to trigger the same process all over again.

The task of this court in interpreting the decisions of the Michigan Supreme Court is to examine the facts of this case and to predict how that court would decide the issue. 19 Wright, Miller & Cooper, § 4507, p. 85. Given that court's careful analysis of the special injury requirement as a whole and given the court's stated rationale for its decision, which includes "the preservation of free access to the courts," *Friedman,* 412 Mich. at 28, 312 N.W.2d 585, this court may not presume that the holding is limited to instances in which a doctor sues a lawyer for a malicious malpractice action.

■ Thus, while this case is distinct from the *Friedman* fact situation in certain respects, I do not believe that the Michigan Supreme Court would view the allegations of any of the plaintiffs as stating a claim of "special injury." Plaintiffs allege respectively in their malicious prosecution and abuse-of-process counts that, by reason of defendants' conduct, they were prevented from proceeding with their usual business and trade (Amended Complaint of Henke Group, ¶¶ 35, 40, 44), that the individual plaintiffs lost their employment (Amended Complaint of Henke Group, ¶ 36), that, as a result of said interference, plaintiffs lost income, profits, and business and suffered damage to reputation and good will (Amended Complaint of Henke Group, ¶¶ 35, 40), and that plaintiffs suffered substantial expenses in the defense of the Macomb County action (Amended Complaint of Henke Group, ¶¶ 35, 36, 40, 41).

Under the sham litigation counts, plaintiffs allege injuries in connection with the sham litigation which are essentially equivalent to those stated above. (*See* Amended Complaint of Henke Group, ¶¶ 15(d), 18.) In addition, plaintiffs claim incidental damages and damages for mental anguish. (*See, e.g.,* Amended Complaint of Henke Group, ¶ 36.)

These various injury allegations of plaintiffs can be reduced to the following idea: that Ex-Cell-O's suit intimidated and threatened plaintiffs so that they were prevented from conducting their business or employment. This theory focuses on the "technical" or "constructive taking" escape valve that *Friedman* alludes to which, in limited instances, may satisfy the special injury requirement of a malicious prosecution action. *Friedman,* 412 Mich. at 37, 312 N.W.2d 585.

Parenthetically,[3] plaintiffs argue in the briefs that the temporary restraining order issued against Verne may support their claim of special injury. I decline the invitation to consider this argument, first, because no such allegation was contained in any of these plaintiffs' pleadings, and hence, this contention is not properly addressed on this motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), *see discussion, supra,* and secondly, because I doubt that a claim of special injury can be made out by injury to the property of another. *See Powers v. Houghton,* 159 Mich. 372, 123 N.W. 1108 (1909).

On the issue of whether a constructive or technical taking is made out by plaintiffs'

---

3. I note for the record that International Logistics Group, Ltd., was not a party to the Macomb County action, although that is not a dispositive factor in this ruling.

allegation that, as a result of the malicious prosecution, plaintiffs' business was effectively restrained or seized, I note the recent decision of *Chrysler Corp. v. Fedders Corp.,* 540 F.Supp. 706 (S.D.N.Y.1982), in which counter-plaintiff Fedders Corporation raised a similar claim of Michigan statutory and common-law malicious prosecution contending that multiple suits brought by Chrysler "to harass and defame Fedders, and to interfere with Fedders' business and property" caused Fedders to suffer special injury beyond the normal expenses of defending the lawsuit. In *Fedders,* the court did an extensive analysis of the common-law elements of malicious prosecution in Michigan and New York, both "English Rule" states with similar definitions of "special injury", and concluded that Fedders had failed to specifically allege the requisite interference with its property and resulting injuries. *Id.* at 724. Fedders alleged that Chrysler had interfered with its property by filing seven different lawsuits throughout the United States in pursuing its rights under a single transaction, by restraining its property through notice of "lis pendens," by contacting Fedders lenders, by protracting discovery, and by generally "threatening and coercing Fedders into submission." *Id.* at 723. In contrast, plaintiffs in the instant case allege in more conclusory fashion that, by instituting and prosecuting the Macomb County action, Ex-Cell-O sought to drive them out of business and, in fact, did interfere with their business. This is essentially the same claim that was rejected in *Fedders. Id.* at 727, citing *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 476–77, 246 N.E.2d 333 (1969) (plaintiff failed to state a cause of action with allegations that the "action was totally without basis in fact and was begun solely for the purpose of ruining his business reputation by widespread publication of the complaint," for failure to allege interference with person or property).

It is the opinion of this court that, while these plaintiffs have alleged more than the expenses of defending the lawsuit, *cf. Friedman, supra,* it would be inappropriate to treat their claim as alleging special injury under Michigan law. The allegations that a suit was brought solely to "ruin" someone's business or reputation is an exceedingly subjective assertion which any litigant could pose and which could be verified or disproven only upon a trial of the issue. *See Note,* Limiting Antitrust Immunity: Analogies to Malicious Prosecution and Abuse of Process, 86 Harv.L.Rev. 715, 727 (1973). It is presumably for this reason that courts recognizing the special injury prerequisite demand that some "objective" equivalent of a taking be alleged or, as in *Fedders,* that some "provisional remedy" is alleged to have been utilized against plaintiff. Without such criterion, the stringent special injury rule, which the *Friedman* court has so carefully engrafted upon this cause of action, could be swallowed up by an allegation that the defendant "was out to ruin me." I do not believe that this was a result intended by the court in *Friedman.*

Plaintiff Henke posits that: "Where, as here, a party has knowingly prosecuted a baseless lawsuit in order to destroy the business of a competitor, and has effectively accomplished that end, it is inconceivable that the judicial system cannot provide a remedy for the malicious use of its own process." Henke Brief in Opposition to Motion, p. 11. Michigan Supreme Court Justice Morse apparently was of the same opinion when he concluded in *Brand v. Hinchman,* 68 Mich. 590, 597–98, 36 N.W. 664 (1888).

> The common law declares that for every injury there is a remedy. Especially is this so where the injury is malicious. If a man is injured in his credit and reputation, and his business lessened or broken up, it can make no difference, in his right to recover for such injury, that his person or property has not been manually seized or disturbed. *But this is my individual opinion, the other members of the Court not deeming it necessary in this case to express any opinion upon this matter.*

Emphasis supplied by *Friedman,* 412 Mich. at 36–37, 312 N.W.2d 585. The emphasis

placed on Justice Morse's last sentence by the *Friedman* court indicates that his position, albeit commendable, does not reflect the position of the state jurisprudence. This view is not the holding of *Brand* and is rejected by *Friedman.* Moreover, the law does provide alternative remedies for such an injury, such as actions in libel for injury to reputation, interference with contractual relations, and sham litigation. *See, e.g. Fedders,* 540 F.Supp. at 725, *citing Williams v. Williams, supra.*

These plaintiffs also cite the case of *Quartz Hill Consolidated Gold Mining Co. v. Eyre,* LR 11 QBD 674, 689–93; 52 LJQB (NS) 488 (1883), cited by the court in *Friedman* as a case involving a claim of special injury. *Id.* 412 Mich. at 34 n. 22, 312 N.W.2d 585, *Quartz Hill* involved a defendant shareholder who brought a petition to wind up plaintiff company. The case is inapposite to the instant situation. In *Quartz Hill,* the objective and stated purpose of the former lawsuit was to interfere with and terminate the company. Special injury is made out clearly because the action is brought directly to cause the injury, the termination of the business, acts tantamount to a permanent injunction.

For these reasons, I conclude that plaintiffs have failed to state a claim for common-law malicious prosecution in that they have failed to adequately allege "special injury," and accordingly, defendant's Motion to Dismiss under Fed.R.Civ.P. 12(c) is GRANTED as to these claims.

■ Plaintiffs also claim an independent statutory cause of action for malicious prosecution pursuant to M.C.L.A. § 600.2907 which, they contend, requires no showing of special injury. This statute provides in relevant part that:

Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action ... shall be liable to the person so ... proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him ....

While the court of appeals in *Drouillard v. Metropolitan Life Insurance Co.,* 107 Mich. App. 608, 618, 310 N.W.2d 15 (1981), *leave denied,* —— Mich. ——, made brief reference to the fact that "[i]n Michigan, malicious prosecution is both a common-law and statutory action," other courts have noted that there is a "paucity of case law interpreting this 103-year-old statute." *Peisner v. Detroit Free Press, Inc.,* 68 Mich.App. 360, 365, 242 N.W.2d 775, *leave denied,* 399 Mich. 825 (1977) (1976); *LaLone v. Rashid,* 34 Mich. App. 193, 196, 191 N.W.2d 98 *leave denied,* 386 Mich. 756 (1971). After noting that no case in Michigan, as of 1971, had specifically construed this enactment as it applies to an action for malicious prosecution, the court in *LaLone* was "forced to conclude that the enactment provided only an additional method of computing punitive damages" and that "it added nothing to the substantive law when it recited that to be entitled to treble damages the procuring of the arrest had to have been done *maliciously.*" (Emphasis in original.) *Id.* at 202, 191 N.W.2d 98. When presented with the contention that this provision created an independent cause of action for abuse of process, the court in *Peisner* concluded that the purpose of M.C.L.A. section 600.2907 "is to permit a person with a valid common law cause of action to recover treble damages" and that the statute "does not create a cause of action for abuse of process independent of the common law." *Peisner,* 68 Mich.App. at 366, 242 N.W.2d 775.

Finally, as noted earlier, Judge Tenney of the Southern District of New York had occasion to interpret this statute recently in *Chrysler Corp. v. Fedders Corp., supra,* and concluded that

Section 600.2907 does *not* change the common law elements of a malicious prosecution claim, but only provides a choice for the plaintiff, who may decide between sending the issue of punitive damages to

the jury or having the court treble an award of compensatory damages arrived at by the jury. (Indeed, many of the cases discussing the statute have involved only whether the jury had considered punitive damages; if so, the plaintiff is not entitled to a trebling of their award. *See, e.g., Taft v. J.L. Hudson Co.* [37 Mich.App. 692, 195 N.W.2d 296 (1972)]; *LaLone v. Rashid, supra.*

*See also Leeseberg v. Builders Plumbing Supply Co.,* 6 Mich.App. 321, 332, 149 N.W.2d 263, *leave denied,* 379 Mich. 768 (1967) (statute inapplicable to attachment of personal property).

This interpretation of section 600.2907 by the courts in *Fedders, LaLone,* and *Peisner* appears to be the correct one, particularly in view of the fact that the *Friedman* court, in an exhaustive fifty-page analysis of the common-law malicious prosecution action, makes no mention of an "independent" statutory action in which no showing of special injury is required.

Accordingly, defendant's Motion to Dismiss plaintiffs' statutory malicious prosecution claim pursuant to M.C.L.A. § 600.2907 is likewise GRANTED.

Plaintiffs in the Henke Group also raise an abuse-of-process claim in Count IV of the amended complaint contending that the Macomb County action was commenced and prosecuted for the purpose of coercing plaintiffs to discontinue their business so as to remove these plaintiffs as competitors in the armored car market and to continue its monopoly in the field. Plaintiffs also allege various other improper acts committed by defendants, most of which are outside the process of litigation. (Amended Complaint ¶ 15.)

■ To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Spear v. Pendill,* 164 Mich. 620, 623, 130 N.W. 343 (1911), *cited in Friedman,* 412 Mich. at 30,

312 N.W.2d 585. The essence of this tort is set forth in Restatement (Second) of Torts, § 682 comment a, the language of which was adopted by the Michigan Supreme Court in *Moore v. Michigan National Bank,* 368 Mich. 71, 117 N.W.2d 105 (1962). "The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish . . . ." Some irregular act in the *use* of process must be plead; it is insufficient to allege only that complaint and summons issued for an improper purpose. *Friedman,* 412 Mich. at 30–31, 312 N.W.2d 585.

■ Although plaintiff Henke has not offered any authority which would support a claim of abuse of process in this fact situation, other plaintiffs have noted the authority of *Three Lakes Association v. Whiting,* 75 Mich.App. 564, 255 N.W.2d 686 (1977), in which a claim survived a motion for judgment on the pleadings where plaintiff alleged that defendants initiated an action for damages against him with the purpose of causing so much trouble and expense in defending that action that plaintiff would be forced to give up his opposition to the defendant's building project. The court of appeals concluded that it could reasonably be inferred from the plaintiff's well-pleaded complaint that defendants had used process as a "threat or a club" to achieve their collateral and improper purpose.

The allegations contained in the *Three Lakes* complaint are distinguishable from that of the Henke group in several important respects. In *Three Lakes,* plaintiff made specific allegations of improper acts in the course of process such as offering to dismiss their suit in return for an end to all opposition, tortious or otherwise, by plaintiff to their building project. *Id.* at 574,

255 N.W.2d 686. Plaintiffs further alleged that defendants

> abused the discovery process by burdening plaintiff with requests for discovery while at the same time causing delays in complying with legitimate discovery procedures of plaintiff, that defendants at one point agreed to settle the case and subsequently refused to comply with that agreement, and that defendants have conducted that lawsuit in an oppressive manner in various other ways.

*Id.* at 570, 255 N.W.2d 686.

In *Three Lakes,* plaintiffs alleged further that defendants, in filing the prior action, had no intention of accomplishing the ostensible purpose of the suit (to recover damages) but rather intended to use that suit as a means to coerce plaintiff to give up his opposition to the building project. *Id.* at 570, 255 N.W.2d 686. The court of appeals deemed the latter a "collateral" and "ulterior" purpose, a fact evidenced by defendants' offer to dismiss the damage action in its entirety if plaintiffs ceased their opposition to the project. The facts of *Three Lakes* point up three facets of the *Spear* standard which are distinctively absent in the case at bar: the *collateral* nature of the ulterior purpose, the number of independent acts alleged in the course of process, (a relevant but not dispositive factor), and the relationship between the improper acts and the ulterior purpose.

Defendants' ostensible purpose in the Macomb action was to prevent plaintiffs from competing with defendants through the use of defendants' trade secrets and proprietary information. Defendants' alleged ulterior purpose was to prevent plaintiffs from competing *at all.* This is not a collateral purpose, as that alleged in *Three Lakes, Moore,* and *Antcliff,* because such a purpose is indistinguishable from that of the ostensible purpose absent some objective act corroborating such an allegation. An unstated purpose "to ruin one's business" is no more than an improper motive of spite, and as such, it cannot support a claim for abuse of process. Restatement (Second), Torts, § 682; W. Prosser, *supra* at 857. ("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.")

Secondly, in contrast to the ongoing abusive acts during the course of the litigation alleged in *Three Lakes,* the Henke group alleges only that the prior lawsuit was "commenced and prosecuted" for the ulterior purpose described above. I am confident, after *Friedman,* that simply adding the term "and prosecuted" to an allegation that one maliciously filed a complaint cannot, without more, satisfy the independent act criterion of abuse of process. Plaintiff must allege with some specificity an act in the course of process which itself evidences the ulterior purpose, and such an act may not be inferred from an improper motive. W. Prosser, Torts, *supra,* p. 858. Plaintiffs allege further in the sham litigation count that defendants induced John Towell to present false and perjured testimony in an affidavit in the Macomb action. Plaintiffs do not allege, however, the "process" used by defendants to obtain this improper objective (*i.e.,* the perjured testimony). Plaintiffs do not assert that Towell was subpoenaed, and it would appear that a subpoena is not the means by which one induces perjury—the payment of money is the means to that end. Moreover, the court's research has failed to reveal an instance in which an allegation that defendants induced perjured testimony has been held to satisfy the second element of an abuse-of-process claim. Perhaps this can best be explained by reference to Dean W. Prosser's characterization of this tort, that it is a "form of extortion" or a "coercion to obtain a collateral advantage." *See also Chrysler Corp. v. Fedders Corp.,* 540 F.Supp. at 729. The few Michigan cases recognizing this tort have focused on the impermissible pressures put on one's *adversary,* not on a friendly witness. *See, e.g. Antcliff v. June,* 81 Mich. 477, 45 N.W. 1019 (1890) (writ of execution used to coerce payment of a debt). The Restatement

notes "[t]he usual case of abuse of process is one of some form of extortion, using process to put pressure upon *the other [party]* to compel him to pay a different debt or to take some other action or refrain from it." *Id.* at 475, 45 N.W. 1019 (emphasis supplied). Moreover, it is insufficient for plaintiff to allege an improper act in the course of litigation which is divorced from the ulterior purpose alleged. Plaintiff must allege that defendant committed a specific act which was directed at the collateral, ulterior objective. *See* Note, "Limiting Antitrust Immunity: Analogies to Malicious Prosecution & Abuse of Process," 86 Har.L. Rev. 715, 732 (1973). In sum, there must be some basis in the pleadings that the improper act was the means to further the improper purpose. Further, as to the "Towell" affidavit, "abuse of process" is a term of art and thus, while the subornation of perjury is certainly an "abuse", such an act, standing alone, does not necessarily make out the tort. Moreover, the law deals with such improprieties by other means. *See* Michigan Penal Code, M.C.L.A. §§ 750.424, 750.-425; 18 Michigan Law and Practice, *Perjury,* § 1, p. 458 (1982); *see also People v. Sesi,* 101 Mich.App. 256, 300 N.W.2d 535 (1980), *leave denied,* 411 Mich. 1077 (1981) (prosecution for subornation of perjury); *cf. Alberta Gas Chemicals, Ltd. v. Celanese Corp.,* 497 F.Supp. 637 (S.D.N.Y.1980).

Finally, I note that, although *Three Lakes* preceded *Friedman,* the *Three Lakes* decision was not reviewed by the court in *Friedman* in its discussion on abuse of process, presumably because Dr. Friedman's complaint alleged only the use of the complaint and summons. Moreover, *Friedman* did very little to amplify the scope of the tort of abuse of process. This court can only conclude that, were the *Friedman* court faced squarely with *Three Lakes* on the instant fact situation, it would interpret the scope of abuse of process compatibly with that of malicious prosecution, and for the reasons discussed above, the court would circumscribe its application.

As was noted by the Sixth Circuit in *Woodruff v. Tomlin,* 616 F.2d 924, 928–30 (6th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980), this court's duty is to determine state law as it believes the state high court would, and intermediate appellate court decisions may be disregarded if the federal court is convinced by other persuasive facts that the highest court of the state would decide otherwise. *See also* 19 Wright, Miller & Cooper, § 4507, p. 95.

Accordingly, this court having concluded that the allegations of the Henke complaint fail to make out a claim for abuse of process, IT IS HEREBY ORDERED that defendant's motion is GRANTED as to these claims.